F. OTTO SCHRAMM & another *vs.* BOSTON SUGAR REFINING
COMPANY.

Suffolk.   January 10, 1888. — March 1, 1888.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract — Sale — Broker — Rescission — False Representation — Evidence.*

An agreement to ship sugars " per Swedish schooner Sylphide " is satisfied
by a shipment by a vessel of that name which in Sweden would be called a
"schooner," but here a "topsail schooner."

A contract of sale of an unselected article cannot be rescinded at law or in equity
because, prior to the making thereof, an honest expression of opinion is made,
or a statement of fact not purporting to be of knowledge, that the article when
selected will be of a better quality than it proves to be.

A broker in good faith offered for sale to the agent of a refining company a cargo
of sugars to be shipped of "eighty-four degrees test" by the polariscope, and a
contract of sale was thereupon entered into which provided for that test as a
"settlement basis," the price to be adjusted in accordance with variations there-
from.   The actual test varied a number of degrees from that named, and, the
refining company declining to accept the sugar, an action was brought for
breach of contract.   *Held*, that there was no evidence of a false representation
of fact by the broker inducing the contract.

Evidence that the price of an article has fallen, between the date of a contract of
sale and the time of delivery, may be competent to prove the market value;
and the concession of the fact will not make it incompetent.

CONTRACT for breach of the following agreement: " Boston,
December 24, 1885.   Sold for account of Messrs. Schramm &
Co., Maroim, Brazil, through Messrs. Smith and Schipper, New
York, representing, to the Boston Sugar Refining Company,
Boston, a cargo of about four hundred tons more or less of Ma-
roim brown sugars at five and one eighth cents per pound, duty
paid, landed terms.   Less $2\frac{1}{3}$ per cent payable in cash ten days
from average date of delivery.   Sugar to be shipped per Swed-
ish schooner Sylphide (or in case of disaster to that vessel by
another vessel) to Boston during January or February, 1886.
Settlement basis 84° test, allowance at rate of $\frac{1}{16}$ c. per degree
down, $\frac{1}{16}$ c. per degree up, fractions of a degree pro rata."

At the trial in the Superior Court, before *Blodgett*, J., it was
admitted that the contract was made by the defendant's agent
with one Verplanck, a broker, who represented in Boston Smith
and Schipper, the plaintiff's agents in New York.   The parties

agreed that the clause in the contract, " Settlement basis 84° test, allowance at rate of $\frac{1}{10}$ c. per degree down, $\frac{1}{16}$ c. per degree up, fractions of a degree pro rata," referred to a test of the cargo by the polariscope, and provided for an adjustment of the price according to the test, five and one eighth cents per pound to be paid in case the cargo tested 84°, and $\frac{1}{10}$ of a cent per pound less, and $\frac{1}{16}$ of a cent per pound more, in case of variation from that test.

The plaintiffs introduced evidence tending to show that the Sylphide was loaded at Aracaju, the port of Maroim, in Brazil, between February 17 and 20, 1886, with a cargo of Maroim sugar (which was manufactured during the months from October, 1885, to January, 1886), and that she arrived in Boston, with her cargo in good condition, on March 30, 1886 ; that her cargo was landed and placed in the warehouse of the defendant ; and that, on being tested with the polariscope in the manner required by the contract, it tested $79\frac{19}{100}°$ ; after which the defendant wrote to Smith and Schipper, the agents of the plaintiffs in New York, that the sugar was not a proper quality to have shipped under the contract, and declined to receive it.

It was admitted that the parties afterwards by agreement sold the cargo without prejudice, and that the net proceeds were applied to the reduction of the plaintiffs' claim, the difference between the contract price and the net proceeds of the sale being $3,929.88, which amount it was agreed that the plaintiff was entitled to recover, if entitled to recover at all.

The plaintiffs read in evidence the deposition of the captain of the Sylphide, which set forth that he was in command of the " brig Sylphide. I have been in command of her from June, 1885, when she was launched. We call it a schooner in Sweden ; here you call it a brigantine or topsail schooner." And the defendant requested the judge to rule that the plaintiffs had not made out a case, because they had not shown that the cargo was shipped by a schooner called the Sylphide; but the judge refused so to rule, saying that the description was well enough upon the evidence, and that, if the defendant had any right to insist upon any variance, it had waived it.

The defendant contended that it was induced to make the contract by false and fraudulent representations made to it by

Verplanck, who acted for the plaintiffs in negotiating the sale, and further relied on the untruth of these representations inducing the contract, as constituting a defence in equity.     One Foster, the president of the defendant company, testified that he conducted the negotiation for the purchase of the sugar named in the contract with Verplanck; that he knew that the crop of sugar at Maroim was a crop that came in from October to January; that "Verplanck offered me a cargo of sugar coming from the port of Maroim, in Brazil, and described that cargo to me as eighty-four test sugar"; and that "a variation of one degree nothing would be said about; I think a variation of two degrees they might complain; anything more than that would be serious; anything more than that, I think they would try to get an allowance on it."     On cross-examination, he testified that Verplanck "offered to me a cargo of Maroim sugars of eighty-four degrees test"; that he could not describe Verplanck's language fully, but that that was his best recollection; that "possibly, it would n't be out of the way," though he did not remember, Verplanck might have come to him with a telegram stating, "You are authorized to offer a cargo of sugar ex Sylphide from Maroim, 84° settlement basis, a sixteenth up and a tenth down"; and that he did not think that Verplanck had been guilty of any fraud, and that he did not think that he would be.

The defendant's counsel admitted to the court that he had no evidence to show that Verplanck or Smith and Schipper knew at the time of the sale that the quality of the cargo was not as defendant claimed it was stated by Verplanck, or that the crop of Maroim sugar for that year was an inferior one; and the plaintiffs admitted that they had not informed Smith and Schipper, when authorizing them to sell this cargo, or prior to such sale, that the crop of Maroim sugar that year was inferior.

At the conclusion of this testimony, the judge asked the defendant's counsel whether he intended to change the testimony, or to offer any other evidence of fraudulent representations to support the defence on this point; and the defendant's counsel having stated that he did not, the judge said, "I will not say that there is not some evidence of a misstatement of fact" in regard to the cargo, but ruled that there was no evidence to support the defence on this point, and that the defendant had failed to

establish the equitable defence on which it relied; to which ruling the defendant excepted.

The witness Foster was asked, on cross-examination, whether the market price of sugar had not fallen between the time of the contract and the time when the cargo in question was landed, and answered, first, that he did not remember, and finally, that he thought it had, but could not say how much; and Verplanck, when asked how much the market price of sugar had fallen between the date of the contract and the date when this cargo arrived, answered, " Three eighths of a cent," and said that the amount claimed by the plaintiffs was in fact the difference between the contract price and the market price of the sugar, and was seven sixteenths of a cent a pound less than the contract price. The defendant objected to the admission of this evidence, but the judge admitted it.

The defendant further contended, upon the evidence, first, that the sugar delivered was not Maroim sugar; secondly, that there was a usage in the sugar trade in Boston by which the defendant, under a contract like the one in suit, was entitled to reject the sugar, if, when tested by the polariscope, it did not show the test within two or three degrees of the settlement basis fixed in the contract; but the judge, without objection from either party, submitted to the jury, as the only questions of fact in issue, whether the sugar delivered was Maroim sugar, and whether the usage upon which the defendant relied existed, under instructions to which no objection was taken.

The jury found for the plaintiffs; and the defendant alleged exceptions.

*D. E. Ware*, for the defendant.

*M. Storey*, for the plaintiffs.

FIELD, J. The jury have found, under instructions to which no exception was taken, that the sugars delivered were Maroim brown sugars, within the meaning of the contract, and that there was no usage by which the defendant was entitled to reject the sugars because they fell below the test, which the contract made the basis of settlement, by more than two or three degrees of the polariscope.

It is plain that the sugars were shipped by the vessel intended by the parties to the contract; that this vessel might well have

been called a Swedish schooner; that the defendant did not refuse to receive the sugars because the vessel carried some square sails; and that this fact was immaterial.

The defendant contends that there was evidence of a false representation of fact made by the agent of the plaintiffs whereby the defendant's agent was induced to make the contract. If any such representation was made, it was made by Verplanck, the broker, and it is said that there was evidence that a representation was made by him that the sugars were " of eighty-four degrees test." " The defendant's counsel admitted to the court that he had no evidence to show that Verplanck or Smith and Schipper knew at the time of the sale that the quality of the cargo was not as defendant claimed it was stated by Verplanck." There was no evidence that the plaintiffs knew that Verplanck ever made any such representation, or ever authorized him to make any such representation. The contention is, that if Verplanck, as agent of the plaintiffs, made a positive representation of fact, although he was not authorized by them to make it, and they did not know that he had made it, and although he believed it to be true, yet, if the defendant's agent relied upon it in making the contract, the defendant could rescind the contract, if the representation was actually false. If we assume that this is the law, we are yet of opinion that the evidence recited in the exceptions would not have warranted the jury in finding that Verplanck made any statement which was, or was understood by the defendant's agent to be, a positive representation of an existing fact relating to an ascertained lot of sugars.

There was no evidence that there was an ascertained lot of sugars in existence which Verplanck offered to sell, or that the defendant's agent who made the contract understood that Verplanck represented that there was such a lot of sugars which would test exactly eighty-four degrees. It appears that the defendant's agent clearly understood that the sugars when selected and put on board would vary somewhat from this test, and no contract was made limiting the extent of this variation, and no representation that it would not exceed any definite limit. So far as appears, Verplanck showed to the defendant's agent all the information he had concerning the sugars, and there is no evidence that the defendant's agent understood that Verplanck had any per-

sonal knowledge of the quality of the sugars, or that he made any representation of the quality as of his own knowledge. If the plaintiffs made any representation, it was by the telegram, and that was not false. The contract contains no warranty of the quality of the sugars, and none could be shown by the oral testimony to add to or vary the terms of the written contract. Taking the most favorable view of the whole evidence that can be taken for the defendant, it amounts to this: that in December, 1885, Verplanck, as agent of the plaintiffs, offered for sale a cargo of about four hundred tons, more or less, of Maroim brown sugars, to be shipped by the Swedish schooner Sylphide in the following January or February, and that he in good faith said that they would, or that he thought they would, test about eighty-four degrees; and that, induced by this, the defendant's agent made the written contract in which eighty-four degrees was taken as the " settlement basis," and the price was agreed upon, with stipulated variations up or down if the sugars tested more or less than this.

Contracts of sale of articles thereafter to be selected cannot be rescinded because before the making of the contracts there may have been an honest expression of opinion, or an honest statement of fact not purporting to be as of knowledge, that when the articles are selected in conformity with the contracts they will be of a better quality than they prove to be. We are not aware that in this Commonwealth there is in this respect any different rule in equity from that which obtains at law. *King* v. *Eagle Mills*, 10 Allen, 548. *Pike* v. *Fay*, 101 Mass. 134. *Litchfield* v. *Hutchinson*, 117 Mass. 195. *Ormrod* v. *Huth*, 14 M. & W. 651.

The measure of damages was the difference between the contract price and the market value at the time and place of delivery. If the evidence that the market price of sugars had fallen between the date of the contract and the time when the cargo arrived and was landed was admitted for the purpose of proving this market value, it may have been competent in connection with other evidence; the fact that the evidence was rendered unnecessary by the concession of the defendant does not make the admission of it a ground for a new trial. *Priest* v. *Groton*, 103 Mass. 530, 540. *Jennings* v. *Whitehead & Atherton Machine Co.* 138 Mass. 594. It does not appear that this evi-

dence was admitted for any other purpose, and the objection taken is general. We cannot say that evidence of the amount of the fall in price of sugars generally was not some evidence of the amount of the fall in price of this particular kind of sugars. The defendant contends that it was prejudiced by the admission of this evidence, and that the plaintiffs' counsel might argue from it that the defendant refused to receive the sugars because they had fallen in price, and not because they did not test eighty-four degrees. The exceptions do not state that any such argument was made; but if it was, we cannot say that it was not legitimate, or that it could not as well have been made upon the concession of the defendant as upon the evidence.

*Exceptions overruled.*