## SHEEHAN v. BRADDOCK COAL CO.

(Circuit Court of Appeals, First Circuit. November 22, 1923.)

No. 1667.

1. **Appeal and error ⬧1070(1)—Error in computation by jury, subsequently corrected, held not ground for reversal.**

An excessive verdict, due to an inadvertence in the instructions which led the jury to make an erroneous computation, but which was corrected before entry of judgment, *held* not ground for reversal.

2. **Sales ⬧382—Evidence of drop in price after contract held admissible in action against purchaser for breach.**

In an action against the purchaser for breach of a contract for coal, evidence that the market price of coal dropped between the date of contract and breach *held* admissible.

3. **Appeal and error ⬧690(5)—To review admissibility of testimony in rebuttal, record must contain prior evidence.**

An appellate court cannot determine admissibility of testimony in rebuttal, where the record contains but a small part of the prior evidence.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the Braddock Coal Company against David J. Sheehan. Judgment for plaintiff, and defendant brings error. Affirmed.

H. Ashley Bowen, of Lynn, Mass., for plaintiff in error.

Jasper N. Johnson, of Boston, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The coal company sued Sheehan for breach of a contract to take and pay for 1,000 tons of coal. Sheehan pleaded, besides a general denial, plaintiff's fraud, the statute of frauds, and that the coal was of inferior quality. He also brought a cross-suit, on which he elected to rely rather than upon recoupment, for any damages due him. The coal company prevailed in both suits. The case comes here on four assignments of error, none of which is meritorious.

[1] 1. In the first assignment, Sheehan complains that the jury were misdirected as to damages; that the court said they might be "considerably helped by the somewhat careful statement of the claim in the plaintiff's declaration," when, in fact, the declaration that went to the jury stated a claim for the sale of 1,083.10 tons, instead of 1,000 tons, which the court had, at the defendant's request, ruled was the only amount for which there was evidence of a contract. The statement was, of course, nothing but a suggestion as to a convenient means of refreshing the jury's memory as to the evidence offered concerning figures and details of damage. Both court and plaintiff's counsel overlooked the fact that the contemplated amendment had not at that time been made. The result was that the jury returned a verdict apparently based on the figures in this declaration, 1,083.10 tons. But, on motion for a new trial, plaintiff was required to remit, and did remit, the ex-

cess, so that the defendant was in no way injured by any use of the declaration by the jury in assessing damages. Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746. Other adequate grounds for holding this assignment bad, we do not discuss.

[2] 2. Defendant's next complaint is that the court erred in admitting evidence that the market price of coal dropped, between the date of the contract and the date of the alleged breach.

This evidence was plainly competent on the question of market value, an issue necessarily involved in the plaintiff's case. Schramm v. Boston Sugar Refining Co., 146 Mass. 211, 15 N. E. 571. Apparently it was competent for other purposes.

3. The third assignment is based on the court's refusal to order a verdict for the defendant, on the ground that the plaintiff's agent had, on rebuttal, contradicted testimony which he gave on direct, tending to show that the defendant had accepted a part of the coal in question, thus meeting the defendant's contention that the contract was unenforceable because of the statute of frauds. But before the plaintiff rested the defendant's books were, by stipulation, in evidence, and the defendant admits that after his books had been examined, which was done in the course of the defense, there was evidence before the jury of acceptance and receipt by him. This exception is frivolous.

[3] 4. The fourth assignment is that, on rebuttal, the plaintiff's vice president was permitted to testify, that after he had had an interview with the defendant concerning two cars of coal, which were admittedly delivered to and sold by the defendant:

"If I had known or had an inkling on December 7th, when I left Boston for Cumberland, that Mr. Sheehan wasn't satisfied with the coal, and his intentions were to reject it and turn it back on the Anderson Coal Company, I certainly would have stayed here to try to straighten the thing out."

When the defendant rejected the coal shipped to him, it was, as the court below charged, the seller's duty to "exercise reasonable care and judgment in making a resale." Gen. Laws Mass. c. 106, § 49 (5). Its conduct in that regard seems to have been attacked.

The evidence complained of was, we infer, admitted for the purpose of meeting Sheehan's contention that the coal company's vice president should have remained in Massachusetts and dealt more efficiently with the resale than did the subordinate who appears to have handled the matter.

At any rate, we cannot say that it was not competent for this and for other purposes, for we have before us but a trifling part of the evidence on two cases so rich in controversy as to require a charge to the jury of more than 15 pages. It is plain enough, from the defendant's own argument, that in no aspect of the case did the admission of this evidence involve reversible error.

The judgment of the District Court is affirmed, with costs to the defendant in error in this court.