## Norman Spurr *vs.* Caleb Benedict.

The owner of a lot of forty-five acres of woodland, bought by him under a mistake as to its location, which mistake he had not discovered, stated, in negotiating a sale of it, that it was situated in the town of S., was all dry land and almost all accessible to teams, and would cut from fifteen to eighteen cords of wood per acre; when in fact it was situated in the town of G. B., a hundred and thirty rods from the boundary of S., included a swamp more than an acre in area and some ledges of rock inaccessible to teams, and would cut in no part more than fifteen cords of wood to the acre, and in some parts not more than five cords. He further represented that it adjoined a good wagon road and a cleared field, and showed to the buyer's agent a tract of six or eight acres as belonging to it, which adjoined such a field and a public highway; when in fact it did not include this tract, and no part of it adjoined a cleared field, or any road except a wood road. Under the influence of these misrepresentations the sale was completed by the buyer's giving his note for the purchase money and taking a deed of the lot on the face of which there was nothing to show that the land shown was not identical with the land conveyed. He would not have made the purchase if he had known the truth about the land; and, upon discovering it, he offered to reconvey the lot to the seller, and demanded a return of his note;

with which demand the seller refused to comply, and put the note in suit. *Held,* that the buyer was entitled to a perpetual injunction on the seller against prosecuting the action on the note; although the misrepresentations of the seller were made without the purpose of deceit, and the deed he gave was a mere deed of quitclaim without any covenant of title or warranty.

BILL IN EQUITY for an injunction on the defendant against prosecuting an action at law on a promissory note of the plaintiff, and for general relief in the matter of a purchase of land by the plaintiff of the defendant. The case was referred to a master, who found the facts hereafter stated; and was reserved on his report, by *Gray,* J., for the determination of the full court.

In the autumn of 1864 the defendant entered into a negotiation to buy from Sarah Wheelock a lot of forty-five acres of woodland, situated near the boundary line between Sheffield and Great Barrington; employed Lyman M. Merryfield, who owned land adjoining, to point out the lot to him; and took a deed from Wheelock, dated October 17, 1864, supposing that it covered all the land pointed out by Merryfield; when in fact Merryfield was mistaken as to the boundaries of Wheelock's lot, and had pointed out to the defendant, as a part of it, some land adjoining a cleared field and an old public road, which did not belong to Wheelock and was not covered by her deed.

Later in the autumn, the defendant offered to sell the lot to the plaintiff, to whom he represented that it was situated in Sheffield, adjoined a cleared field and a good wagon road, " was all of it dry land, and very comfortable land to get timber off of," " would cut from fifteen to eighteen cords per acre," and that one " could go with a team on almost any part of it." And soon afterwards Henry Snyder, the plaintiff's agent, met the defendant, by agreement, for an examination of the land; and the defendant pointed out to him, as belonging to it, the land adjoining the cleared field and the road, " and one boundary, at least, (a large rock,) which was at some distance from his land." " As the result of this examination, it was agreed, between Snyder and the defendant, that the defendant should convey the land to the plaintiff, who should give his note to the defendant in the sum of $600." " Snyder wanted a warranty

deed, which the defendant refused to give, but executed a quit-claim deed" without any covenant of title or warranty, " and left it with one Bradford to be delivered to the plaintiff when he should give his note for the $600; and the plaintiff afterwards called and took his deed and left the note," which was made payable on demand. " Snyder's first offer to the defendant was, ' I will give you $600 if you will survey the land out to me;' and the defendant replied, ' No, I will not do that;' and, either in this connection, or while they were upon the land, said, ' There are the minutes; you can survey it as well as I can.' "

The deed described the premises conveyed as a parcel of land in Sheffield, " being the same tract of land I purchased of Sarah Wheelock by her deed dated October 17, 1864," and referred to the Wheelock deed, or the record thereof, for a more particular description. The land which it covered was not situated in Sheffield, but in Great Barrington, a hundred and thirty rods north of the boundary line between the two towns; would not cut from fifteen to eighteen cords of wood per acre, but would cut, in part five or six cords, in part eight or ten cords, and in part twelve or fifteen cords; included some ledges of rock not accessible by teams, and also a swamp more than an acre in area; and did not adjoin any public road, but did adjoin a " wood road " along its southern boundary.

The land erroneously shown to Snyder as belonging to the lot included at least six or eight acres, would cut from twelve to fifteen cords of wood per acre, and, as above stated, adjoined an old public road (which, however, was but little used) and a cleared field.

During the ensuing winter, Snyder went upon the conveyed premises with a surveyor, to identify their boundaries, but was unsuccessful in the effort; and by the direction of the plaintiff, (who had never occupied or used the land,) he proposed to the defendant to return the deed and take back the note; but the defendant refused the proposal, and afterwards sued the note against the plaintiff; whereupon the plaintiff, who had fully discovered the mistake about the land, made tender to him of a reconveyance of the land and of indemnity against all expenses

incurred by him in the suit on the note, and demanded of him a surrender of the note, on the ground of mistake in the contract; and upon his refusal filed this bill.

The plaintiff and Snyder were permitted to testify, before the master, against the defendant's objection, that if they had known the facts about the land, as afterwards ascertained, they would not have concluded the purchase; and the plaintiff further to testify that the fact alone that the land was situated in Great Barrington instead of Sheffield would have made a difference with him.

*I. Sumner,* (*J. Dewey, Jr.,* with him,) for the plaintiff.

*B. Palmer,* for the defendant.

FOSTER, J. There can be no doubt of the full equity jurisdiction of this court to set aside a conveyance of land, on the ground of mistake, where the vendor has undertaken to sell something which he did not own, and the estate embraced in the deed, although owned by him, is not that which the vendee intended to buy and supposed that he was obtaining by the conveyance. In such a case the equity for a rescission of the transaction does not depend upon any intentional fraud on the part of the grantor; and it is by no means limited to cases in which an action for deceit would lie at common law. Mistake is a head of equity jurisdiction distinct from fraud. Relief is granted on the ground that it would be unconscientious to oblige a man, who has not been himself negligent or in fault, to adhere to his bargain, and to retain property which he was induced to purchase by a misapprehension as to a material and essential circumstance, which he was led into by the conduct of the other party.

In the present instance, the defendant not only made exaggerated statements as to the value and quality of the land he proposed to sell, but he pointed out to the plaintiff's agent some land which he did not own, as embraced in the bargain, and one boundary which was at a considerable distance from the premises which he actually owned and conveyed by his deed. The land pointed out to the plaintiff's agent was of a better quality than that conveyed, would cut more wood, and corresponded

with the description which the defendant had given to the plaintiff himself. All this appears to have been done innocently. Neither the purchaser, nor his agent, seems to have been negligent. They naturally relied on the vendor to point out the boundaries of his estate, and there was nothing in the deed to indicate that the land shown and conveyed was not the same. The defendant was himself mistaken as to what he owned, and consequently misled the plaintiff; and under the influence of this mutual error the transaction was consummated. But the prejudicial consequences to the purchaser are the same as if the conduct of the vendor had been designedly fraudulent. He has obtained, not what he expected to have, but something else which he did not intend to buy and would not have bought if he had known the truth. Of this we are satisfied, upon the report of the master; and it amounts to a case for equitable relief.

Nor is the fact that only a quitclaim deed was given any bar to the plaintiff's equity; because the mistake does not relate to the title obtained, but to the very subject matter of the contract. One parcel was bargained for and supposed by both parties to be embraced in the deed; another and different one was actually conveyed. The absence of covenants of title and warranty can make no difference; as their insertion would have afforded no protection against a mistake of this description. For a citation of the authorities, and discussion of this question, see *Earle* v. *De Witt*, 6 Allen, 520. The plaintiff has already executed and tendered a reconveyance of the estate, and is entitled to a

*Decree perpetually enjoining the defendant against prosecuting the action at law pending upon the note given for the purchase money.*