## META H. NICKERSON *vs.* MASSACHUSETTS TITLE INSURANCE COMPANY.

Suffolk.   December 5, 6, 1900. — March 6, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

A title company employed by a savings bank to examine the title to a certain lot of land and to draw the papers for a mortgage upon it, did so, and represented that the title was clear and unencumbered, and in reliance on this representation the bank made the loan, the title company drawing the mortgage. There was a prior mortgage which was held by the title company, the existence of which without intent to deceive it negligently failed to disclose. Subsequently the savings bank foreclosed its mortgage, and the receivers of the bank conveyed the land by a quitclaim deed to a purchaser, who had notice of the existence of the prior mortgage in the hands of the title company. In a suit in equity brought by such purchaser against the title company, to restrain it from enforcing its prior mortgage, it was *held*, that the bill could be maintained, as the title company owed the savings bank the duty of using due care, to ascertain and report all encumbrances on the land, and, by its negligence having failed to do so, was estopped from setting up its prior mortgage. *Held, also*, that the fact that the plaintiff was a grantee under a quitclaim deed having full knowledge of the facts did not prevent him from enforcing the estoppel; that the savings bank had the election of suing the title company in tort for negligence or of bringing a suit in equity founded on the defendant's estoppel, to enjoin it from setting up the encumbrance, and having elected to rely on the estoppel, could pass the right to a purchaser, who could enforce it in his own name.

One who has a clear title by estoppel can convey his rights to any one, and the knowledge or ignorance of the purchaser is immaterial.

One employed as an attorney to draw an instrument cannot take advantage of a claim founded on a statement surreptitiously inserted by him in the instrument to the prejudice of his employer, which is true in fact but which he is estopped by his former conduct from setting up.

BILL IN EQUITY by the owner of lot 399 on a plan of lands in that part of Newton called Waban, praying that the defendant be decreed to be estopped from enforcing a mortgage for $905.56, dated May 3, and recorded May 29, 1890, given by

Jacob L. Hano to Arnold A. Rand, trustee, and held by the defendant by assignment, filed December 16, 1899.

At the hearing in the Superior Court, before *Bell*, J., it was admitted that the plaintiff was the owner of the equity of redemption of lot 399 under a quitclaim deed from the receivers of the Framingham Savings Bank and that she had notice of the existence of the first mortgage of May 3, 1890, for $905.56, held by the defendant, before she took her deed of the property from the receivers.

The judge found the following facts :

" This mortgage [of May 3, 1890, from Jacob L. Hano] was assigned by Arnold A. Rand, trustee, to Samuel Hano, May 25, 1890, by deed recorded May 27. As the assignment was recorded before the mortgage, it did not state the book and page of the record of the mortgage, and there was no marginal reference upon the record of the mortgage. On the same day the mortgage was assigned by Samuel Hano to the defendant. This assignment was also recorded May 27, 1890.

" Jacob L. Hano conveyed the fee to Arnold A. Rand, trustee, October 7, 1890, and Rand to James Thomas, September 3, 1891, by quitclaim deed. James Thomas mortgaged the property to the Framingham Savings Bank for $8,000 on the same day. Neither the deed nor mortgage mentioned the mortgage of May 3, 1890.

" In this transaction the defendant acted for the bank, examined the title of the property for it, and represented it to be clear and unencumbered, and the loan was made by the bank in reliance upon that representation.

" On April 16, 1894, this Thomas mortgage was foreclosed by sale, Joseph S. Adams being the purchaser. On May 4, 1894, Adams conveyed to Frank Prescott, and on the same day Prescott conveyed this and other lots to Sylvestus L. Fillebrown, and Fillebrown gave a mortgage of this and other lots to Prescott to secure the payment of $77,580. These four conveyances (the bank to Adams, Adams to Prescott, Prescott to Fillebrown, and Fillebrown to Prescott) were all acknowledged on May 4 and recorded on May 14, 1894,

" The mortgage of Fillebrown to Prescott was assigned to the Framingham Savings Bank by deed dated and acknowledged

May 4, but recorded June 28, 1894. These five conveyances appear to have all been parts of one transaction. The mortgage of Fillebrown to Prescott conveyed ten distinct lots which were described by metes and bounds. This lot was the second lot described. At the conclusion of the description of this lot, after a statement of some restrictions, were the words, ' subject also to a mortgage for the sum of nine hundred and five 56/100 dollars given by Jacob L. Hano to Arnold A. Rand, trustee, dated May 3, 1890, and recorded as aforesaid, Book 1977, page 367.'

" Each of the other lots conveyed was subject to restrictions or easements which were set out or referred to in connection with the descriptions. The covenants referred to the mortgage, restrictions or easements only by the added words ' except as aforesaid.'

" The defendant acted for the bank in making this Fillebrown mortgage, and drew all the deeds. This last named mortgage was foreclosed by the bank by three years' possession, expiring May 1, 1898. On May 7, 1898, the receivers of the bank conveyed to Meta H. Nickerson, the plaintiff, who is now the owner.

" I find that the bank and its officers were in fact ignorant of this mortgage, and relied upon the defendant's examination of the title, and were justified in so doing, and were not negligent, and that the defendant was during the whole time in possession of said mortgage as assignee, and that it was negligent in not disclosing the existence of said mortgage to said bank at the time of the original mortgage, and in not informing said bank of the existence of said mortgage at the time of the assignment of the Fillebrown mortgage to the bank in May, 1894."

The decree was as follows:

" 1. That a writ of injunction be issued permanently restraining the defendant from further proceeding with the foreclosure sale under the mortgage referred to in the plaintiff's bill, from selling the premises therein described, from taking any steps of any nature whatever to enforce said mortgage, and from assigning or transferring said mortgage.

" 2. That the defendant be, and hereby is, forever estopped and debarred from asserting any title adverse to the plaintiff or those claiming title under her, under and by virtue of said mortgage to the premises described therein.

" 3.  That the defendant forthwith cancel and discharge said mortgage upon the records, and surrender the original mortgage deed to the plaintiff.

" 4.  That the plaintiff recover her costs of suit."

From this decree the defendant appealed.

*J. F. Wiggin,* (*B. M. Fernald* with him,) for the defendant.

*P. H. Cooney,* for the plaintiff.

LORING, J.   1.  The defendant's principal contention is that the plaintiff does not make out a case of an estoppel *in pais* unless she proves an intent to deceive on the part of the defendant, and that all that has been found in this case is that the defendant was negligent.

Where one employed to draw a deed omitted to insert in the deed drawn by him an encumbrance which he himself then owned, it was decided in England more than two hundred years ago that he was estopped from setting up his encumbrance against the rights which his employer obtained relying upon the deed, and that equity would enforce the estoppel and restrain him from doing so.  *Draper* v. *Borlace,* 2 Vern. 370.  It has since then been decided that, where a representation has been made by a stranger, who was under no duty to the person making the inquiry, that no encumbrance existed when he in fact had one, an estoppel was made out even though the omission to speak of the encumbrance was an innocent one arising from forgetfulness, and equity would enjoin the setting up of the encumbrance.  *Burrowes* v. *Lock,* 10 Ves. 470.  *In re Ward,* 28 Beav. 519.  See also *Ibbottson* v. *Rhodes,* 2 Vern. 554 ; *Amy's case,* cited in 2 Ch. Cas. 128; *Berrisford* v. *Milward,* 2 Atk. 49 ; *Stronge* v. *Hawkes,* 4 De G., M. & G. 186, 194, 196 ; *Piggott* v. *Stratton,* 1 De G., F. & J. 33.  And finally, in *Low* v. *Bouverie,* [1891] 3 Ch. 82, 100, 105, 111, in which the whole question was discussed at length, it was admitted by all the judges that where the person making the representation owed a duty to the other, an innocent omission arising from negligence would raise an estoppel.

It is enough to say that in the case at bar the defendant owed to the savings bank the duty of using due care to ascertain and report all encumbrances on the land, and it was found that it was negligent; while in *Stiff* v. *Ashton,* 155 Mass. 130, and the other cases relied on, the defendant was under no obliga-

tion to the plaintiff; and for that reason there is an estoppel in this case even if there is none in those cases.

2. The defendant's next contention is that, even if the savings bank had a right to have the defendant declared estopped to set up the mortgage in question, the plaintiff, as grantee of the land under a quitclaim deed, has not succeeded to that right; particularly since it appears that she bought with full knowledge of all the facts, and that a deposit has been made by the receivers of the savings bank, who sold the land to her, to pay the mortgage if she cannot enforce the estoppel. The defendant seeks to escape from *Platt* v. *Squire*, 12 Met. 494, by pointing out that in this case there is no extinguishment of the note secured by the Hano mortgage; the contention is that where, as in this case, the employer has an action of negligence, he does not, by conveying the land, convey the right to enforce that action. But the receivers of the savings bank not only had a right to bring an action at law to recover damages suffered from the defendant's negligence, but they also had the right to bring a suit in equity founded on the defendant's estoppel and have it enjoined from setting up the encumbrance of the Hano mortgage. *Draper* v. *Borlace*, and cases *supra*. They have elected to pursue the second remedy and not the first. If the right to insist upon the defendant's being postponed to them was a personal right which could be enforced by them only so long as they owned the land, and could not be transferred by them to a purchaser, it would be of little value. It is plain that if they elected to rely upon the estoppel, the right would pass to a purchaser, *Pearson* v. *Bailey*, 177 Mass. 318, and the purchaser could enforce it in a bill in his own name on the same principle on which it is held that the grantee of an estate, for whose benefit an agreement restricting the use of neighboring lands was made, can enforce that agreement as an equitable restriction against the owner or a grantee from the owner. The cases of *Fairfield* v. *McArthur*, 15 Gray, 526, and *Foster* v. *Wightman*, 123 Mass. 100, relied on by the defendant, are not cases where the grantee was seeking to keep what his grantor had, but cases where the grantee sought to avoid a transaction which the grantor might have avoided but had not avoided, and proceeded upon the theory that the grantor had not elected to avoid the trans-

action. See *Foster* v. *Wightman*, 123 Mass. 100, 101, and *Pearson* v. *Bailey, ubi supra.* In the case at bar, it directly appears from the testimony of one of the receivers, and also from the fact that the deposit already spoken of was made by them, that the real parties in interest in this action are the receivers ; in this case, therefore, the receivers have elected to have the defendant estopped, and not to sue it for negligence. The fact that the plaintiff knew all the circumstances when she took her conveyance does not abridge the right which she got by transfer from one who had a clear title by estoppel. One who has a clear title by estoppel can convey his rights to any one, and the knowledge or ignorance of the purchaser from him is immaterial. A familiar application of the same principle is found in the rule that a *bona fide* purchaser for value of a note to which there would have been a defence had he not been a purchaser of it in good faith for value without notice, can convey his title to any one, even to a person who always had knowledge of the defence.

3. The defendant's next contention is wholly without merit. It is that the plaintiff now holds under a foreclosure of the Fillebrown mortgage, in which it is stated that that conveyance is made subject to the mortgage in question. But it was found by the presiding judge that this statement was inserted in the Fillebrown mortgage by the defendant, who was estopped to set up the mortgage in question, and that the defendant, when it inserted that statement in that mortgage, was acting for the Framingham Savings Bank ; that it did not at that time disclose to the savings bank the existence of the mortgage in question, and that the savings bank and its officers were ignorant of it, and were not negligent. It is, therefore, a case where one employed as an attorney undertakes to set up a claim founded on a statement surreptitiously inserted by it to the prejudice of its employer, without the employer's knowledge. Were it not for the defendant's argument to the contrary, it would not be necessary to add that the judge was warranted in finding that the officers of the savings bank were not negligent in failing to find this statement in the Fillebrown mortgage ; the Fillebrown mortgage was a mortgage covering ten parcels of land, each particularly described, and which, printed in the record in this case, extends

over five printed pages, and the clause in question, which it was found remained unknown to the officers of the savings bank without their being guilty of negligence was surreptitiously inserted at the end of a statement of the restrictions, which attached to the second of these ten parcels of land. See in this connection *Commonwealth* v. *Mulrey*, 170 Mass. 103, 106.

4. The defendant's next contention, apparently, is that the court ought to have found that the savings bank retained $3,000 from the $8,000 which was secured by the Thomas mortgage, and which the defendant title company originally represented conveyed a clear title, and thereby protected itself against the mortgage of $905.56 now in question. This claim rests upon the fact that the plaintiff put in evidence a check of $5,000 as a check by which a payment was made by the savings bank on account of the $8,000 secured by the Thomas mortgage, and upon the fact which appeared in evidence that at the time the money lent was paid, the house on the lot in question was in process of construction, and $800 was spent by the savings bank in completing it, and also on the testimony of the treasurer of the savings bank, who, on cross-examination, said that he could not say for a certainty that the balance of the $8,000 was ever paid. We are of opinion that the presiding judge was warranted in not making a finding that money was retained by the savings bank to protect itself against the mortgage in question, and we see no reason for coming to an opposite conclusion on that question of fact.

5. The defendant's last contention is that there is no evidence on which the court could find that " the defendant gave a certificate that James Thomas held a good title to the premises, free of encumbrances, and that the bank, relying upon the certificate, made a loan of $8,000 on the premises."

The defendant in its answer admitted " that it examined the title to said lot No. 399," the lot in question, and in the report of the evidence, it is stated that the Thomas mortgage, which contained full covenants of warranty, but did not contain any reference to the mortgage in question, was drawn by the defendant acting for the savings bank; it also appeared, from the check put in evidence, that the money paid on the Thomas mortgage was paid by the defendant title insurance company, and

finally that none of the officers of the savings bank who were examined knew of the existence of it.   That was sufficient to justify the finding that was made.   So far as this objection rests upon the point of pleading that the bill alleges that a certificate was given, and no formal certificate was put in evidence, the point was not taken in the court below, and cannot now be raised. The fact that interest was paid on the mortgage in question as late as November 6, 1892, is of no consequence.   So far as the owner of the equity was concerned, the defendant's mortgage was a subsisting encumbrance, the effect of the estoppel being merely to postpone it to the lien of the Thomas mortgage.   The Thomas mortgage was not foreclosed until April 16, 1894; the defendant title insurance company acted for the savings bank in foreclosing that mortgage and thereby cut off its own rights under the mortgage in question as a mortgage which by estoppel was junior to the Thomas mortgage.

The decree entered by the Superior Court should be affirmed.

*So ordered.*