· IRA W. SHAPIRA *vs.* WILDEY SAVINGS BANK.

Suffolk.   December 6, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Equity Jurisdiction*, Mistake, Negligence barring suit.   *Sale*, Rescission. *Negligence*.

In a suit in equity against a savings bank for a rescission of a sale and an assignment to the plaintiff of an overdue mortgage of real estate held by the defendant and for a return to the plaintiff of the purchase money, the evidence warranted the finding of the following facts: The plaintiff, in negotiations with the defendant preceding the purchase of the mortgage, inquired by telephone as to the size of the lot of land covered by it, and the defendant's president stated its bounds on certain streets, and gave its area as twelve thousand feet.  The plaintiff visited the lot and verified the measurements given to him by the defendant's president. There was no mark upon the face of the earth to indicate any actual or contemplated division of the lot.  The plaintiff and the defendant's president then had a conference at the bank, when the measurements given to the plaintiff by tele-

phone were again stated to him and the plaintiff was told that the defendant's examiner, an attorney at law and a specialist in the searching of titles, had approved of the title. Thereupon the plaintiff purchased the mortgage, and the defendant's examiner caused an assignment of it to be made to him. The plaintiff foreclosed the mortgage by sale and purchased at the foreclosure sale, and then for the first time discovered that, after the mortgage had been given, the defendant had given a partial release therefrom of a large part of the mortgaged premises, so that by his purchase and the assignment the plaintiff had paid $11,000 for a mortgage worth only $6,000. This release had been given to make the mortgage conform to the application which the mortgagor had made, in which he had made an arbitrary division of the lot. The defendant's president, when he made to the plaintiff the statements regarding the amount of land covered by the mortgage, and the attorney, when he made the assignment, "although well knowing, forgot and overlooked the fact of the [partial] release." The plaintiff offered to return the assignment and the mortgage note and whatever he had received as rent from the real estate. *Held*, that the evidence warranted findings that there had been a mutual mistake as to the property covered by the mortgage, that the plaintiff had not been guilty of negligence in relying upon the representations of the defendant's president, and that the defendant could be put in *statu quo*, so that the plaintiff was entitled to relief.

BILL IN EQUITY, filed in the Superior Court on October 27, 1910, seeking a rescission of a purchase by the plaintiff from the defendant of a mortgage of real estate made to the defendant by one John J. Johnston, junior.

The case was heard by *Pierce*, J., the evidence being taken by a commissioner appointed under Equity Rule 35. The judge filed a memorandum of his findings, from which it appeared that he found, besides the facts recited in the opinion, the following:

During the negotiations preceding the purchase, in "a reply to a question the plaintiff was told that the bank had had the title examined and proved by their examiner, Mr. [Henry E.] Ruggles, an attorney-at-law and a specialist in the searching of titles.

"Following this agreement, the bank through its attorney Ruggles caused an assignment of the mortgage to be executed, and the same was delivered on the day of its date at the registry of deeds by Mr. Ruggles, acting for the bank, to the plaintiff.

"The plaintiff shortly after proceeded to advertise the property in foreclosure, and at the end of the statutory period and on the day named for the sale purchased the property in the name of his mother-in-law, who admits she holds the legal title in naked trust for the plaintiff and stands ready to do with the same as the plaintiff may direct.

"After the sale the plaintiff learned from his architect and an

attorney who searched the title that the assignment of the mortgage did not transfer, as security for the payment of the debt named therein, the whole property described in the mortgage, which property was the lot above described, but did transfer less than half in area and in value. The difference in value was at least $5,000."

A final decree was entered in substance as follows:

"1. That by reason of a mutual mistake, induced by the statements of the defendant's officers, the plaintiff is entitled to rescind the transaction of purchase of the mortgage referred to in the bill, restoring the consideration actually received by him.

"2. That on tender by the plaintiff to the defendant of the mortgage and note referred to in the bill, together with a release of all her right, title and interest, duly executed by Celia Urofsky, the purchaser at the mortgage sale referred to, the plaintiff recover from the defendant Bank the sum of $12,103.47, being the amount of the plaintiff's payment to the said Bank and disbursements on account of said transaction of purchase, less the amount of rents collected by him, with interest from the sixth day of May, 1910, — a total of $13,547.51, together with" costs.

The defendant appealed.

*R. Y. Fitzgerald, (W. A. Cole* with him,) for the defendant.

*G. W. Anderson, (D. Stoneman* with him,) for the plaintiff.

DE COURCY, J. The judge of the Superior Court, sitting in equity, saw and heard the witnesses, and under the familiar rule his findings of fact will not be reversed unless they are plainly wrong. We are of opinion that he was warranted by the evidence in finding these material facts: The defendant held an overdue note and mortgage made by one Johnston, and in accordance with its business policy wanted to dispose of them without foreclosing. The plaintiff negotiated for their purchase, and in reply to his inquiry by telephone as to the number of feet of land covered by the mortgage, the defendant's president stated: "Dorchester Avenue, 103.15 feet, Greenmount Street, 108.75 feet, rear, 107.50 feet, side, 125 feet: — 12,232 square feet." The plaintiff then visited and examined the premises. On Dorchester Avenue was a one story building of cement construction, containing six narrow stores. A passageway from Greenmount Street on the north afforded access to the rear of these stores, and apparently to the land behind

them, on which was a large dwelling house. On Greenmount Street a granolithic walk extended 108.75 feet, from Dorchester Avenue on the east to the line of fence on the westerly side of the entire lot; and there was no mark upon the face of the earth to indicate any actual or contemplated division. The plaintiff paced the sides of the lot and ascertained that they measured approximately the distances given to him over the telephone by the defendant's president. A conference at the bank followed, the same measurements of the lot were stated by the president, and the plaintiff bought and took an assignment of the mortgage.

Later, after a foreclosure sale of the property, the plaintiff learned that the assignment did not transfer to him as security the whole lot described therein, which was the same as above stated, but only a portion that was less than one half in area and in value. The mortgage when written embraced the entire lot owned by the mortgagor. But in making his application for the loan the mortgagor had made an arbitrary division that separated the front portion including the stores from the rear part on which the dwelling house stood; consequently the bank within a month gave to the mortgagor a release of so much of the lot as was not included in the application for the loan. The president, when he made to the plaintiff the statements herein mentioned, and the bank's attorney, when he made the assignment, "although well knowing, forgot and overlooked the fact of the release;" and the plaintiff was in absolute ignorance of its existence and relied upon the statements of the bank representative. There was a mutual mistake as to the property embraced by the mortgage, and a substantial failure of consideration, because unless the mistake be corrected, it will subject the plaintiff to a loss of more than $5,000 in an $11,000 transaction.

Upon these findings the plaintiff is entitled to the relief prayed for unless he was so negligent in relying upon the representations of the bank's president as to deprive him of the right, or the parties cannot be put in *statu quo*. *Spurr* v. *Benedict,* 99 Mass. 463. *Keene* v. *Demelman,* 172 Mass. 17. *Livingstone* v. *Murphy,* 187 Mass. 315. *Long* v. *Athol,* 196 Mass. 497.

The trial judge found that although an examination of the records at the time of the passing of the mortgage assignment would have disclosed the partial release, yet in view of all the circum-

stances a reasonably prudent man would not have acted otherwise than did this plaintiff. We cannot say as matter of law that the evidence does not justify this finding. *Arnold* v. *Teel,* 182 Mass. 1. *Long* v. *Athol,* 196 Mass. 497. The plaintiff was dealing with a savings bank, whose officers had no inclination or financial interest to deal with him unfairly, as he knew from experience. He had confidence in the ability of the attorney who had examined the title for the bank and who had written the mortgage; and he reasonably might assume that he was succeeding to the rights given to the bank by that mortgage. It is true that an examination of the records subsequent to the date of the mortgage which he bought would have disclosed the fact that the bank had released a portion of the land; but that fact was peculiarly within the knowledge of the defendant, and we cannot say that he was culpably negligent in relying upon the statements of its president in effect that the mortgage was the same as when it was executed.

It also seems apparent that the defendant can be put in a legal sense in *statu quo* as to all essential matters by the carrying out of the decree appealed from. *Long* v. *Athol,* 196 Mass. 497.

*Decree affirmed with costs.*