LOUIS JESELSOHN *vs.* PARK TRUST COMPANY & others.

Middlesex. March 30, 1922. — May 18, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Deed,* Reformation. *Contract,* Rescission. *Equity Jurisdiction,* Reformation of deed, Rescission of contract.

A bill in equity for the reformation of a mortgage deed by reason of mistake in the description of the premises to be subject to mortgage cannot be maintained if it appears that, after the execution and delivery of the deed, third parties had acquired rights as purchasers for value without notice of those rights in the property which were not covered by the mortgage and which the plaintiff sought to have covered by the mortgage as reformed.

In a suit in equity for rescission of a transaction whereby a defendant trust company assigned to the plaintiff a mortgage note and a mortgage securing the payment of the amount due upon the note, it appeared that the owner of five lots of land had given a separate mortgage upon each lot to the defendant, the consideration of each note not to be paid until a projected building was erected upon the corresponding lot according to a report in writing by an employee of the defendant; that no instructions were given by the owner for construction upon one of the lots, and that by mistake the wrong lot was left vacant; that the defendant accepted a mortgage, mortgage note and insurance policy upon the vacant lot as though it had a building upon it, its employee by mistake certifying to it that the building was properly erected thereon;

that this mortgage, mortgage note and insurance policy were assigned and delivered to the plaintiff; that the note was indorsed by the defendant "without recourse" and that the assignment was made "without covenant or warranty expressed or implied and without recourse to" the assignor "in any event." The mistake was not discovered by any one in interest until after the defendant by sale had foreclosed mortgages upon the three other lots having buildings upon them and the plaintiff had begun foreclosure proceedings under the mortgage in question. It was equally open to each of the parties to have ascertained the mistake at any time after the work of construction was begun. *Held,* that

(1) The nature of the indorsement on the note and of the assignment did not affect the plaintiff's rights;

(2) There was no negligence on the part of the plaintiff;

(3) It appearing that the parties could be put *in statu quo* by the trust company returning to the plaintiff the amount received for the assignment, on tender of a reassignment of the note and mortgage, a decree granting the plaintiff rescission should be entered;

(4) Whether or not the owner of the equity had become financially unable to pay the mortgage note did not affect the result.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 11, 1921, against Park Trust Company of Worcester, Medford Trust Company of Medford, New England Realty Company, Inc., and Puritan Construction Company of Boston, seeking a rescission of an assignment of a certain mortgage and mortgage note described in the opinion, and the reformation of that mortgage deed.

Medford Trust Company filed a cross bill seeking reformation of the original mortgage transaction so that the rights of the parties would be as they originally were intended to be.

The suit was referred to a master. Material findings of the master are described in the opinion. The plaintiff filed an exception to the admission of certain evidence which, as stated in the opinion, has become immaterial. The suit was reserved by *De Courcy,* J., for determination by the full court upon the pleadings and the master's report and the exceptions thereto.

*E. P. Finn,* for the plaintiff.

*W. M. Quade,* for the Medford Trust Company.

*W. W. Clark,* for the Park Trust Company.

CROSBY, J. This is a suit in equity praying for the cancellation of an assignment of a note and a real estate mortgage assigned to the plaintiff by the defendant Medford Trust Company, or in the alternative to have the mortgages and deeds referred to in the bill reformed by reason of a mutual mistake respecting the

lots of land therein described. The case is before us on a reservation made by a single justice of this court.

It is plain that the plaintiff is not entitled to have the mortgages reformed as it appears that since the assignment to him the rights of subsequent purchasers for value without notice have intervened. *Nickerson* v. *Massachusetts Title Ins. Co.* 178 Mass. 308. *Livingstone* v. *Murphy,* 187 Mass. 315. *Hillside Co-operative Bank* v. *Cavanaugh,* 232 Mass. 157, 161.

The question then is whether the plaintiff on the facts found by the master is entitled to a decree for a rescission of the transaction. The facts so far as material to the issues involved are, that on April 7, 1919, the defendant New England Realty Company, Inc., hereafter called the realty company, owned a large tract of land in Somerville which included five lots fronting on Gordon Street, numbered 157 to 161, both inclusive; the entire tract was subject to a mortgage held by one Robinson, by the terms of which any lot might be released therefrom by the payment of $200.

On April 7, 1919, the realty company executed and delivered to the Medford Trust Company a mortgage for $3,800 on each of the five lots; each mortgage purported to be given to secure the payment of the grantor's note of the same date and amount with interest. Contemporaneously with the delivery of the notes and mortgages, the grantor and grantee entered into five separate agreements in writing, by the terms of which the realty company was to erect a building on each of the lots, and the sum of $3,800 was to be advanced by the trust company to the realty company in nine instalments, the same to be paid as the work progressed, and upon reports in writing to be made to the trust company by one Lovering, who was to be employed by the company for that purpose. At the same time the realty company took out five insurance policies, each of which insured in the sum of $5,000 the building to be erected on the several lots, each policy being payable in case of loss to the trust company, as mortgagee, as its interest might appear. Although it was understood by the parties that five houses should be erected, only four in fact were constructed; they were on lots 157 to 160 both inclusive, no work being done on lot 161; the trust company advanced $3,800 on each of the four houses erected.

When the work on the houses was commenced, one Brown, the treasurer and manager of the realty company, instructed its foreman to lay out the first cellar on lot 161 and afterwards on lots 160, 159 and 158. By mistake work was started on lot 160, and then successively on lots 159, 158 and 157; when Lovering went to the premises to make inspections of the work he had with him a plan of the lots, but he made no measurements and took no precautions to ascertain whether the houses were being erected upon the respective lots which he designated in his certificates. The officials of the realty company and of the trust company believed that the houses were being erected on lots 161, 160, 159 and 158.

On or about January 14, 1921, the trust company began foreclosure proceedings under each of the four mortgages covering lots 158, 159, 160 and 161, and advertised a sale of the lots to be held on February 8, 1921. The sales were adjourned from time to time to April 14, 1921, when lots 158, 159 and 160 were sold to the defendant, the Park Trust Company, for $4,250 each; the mortgage on lot 161 had been previously assigned to the plaintiff; no house had been built on that lot, although during the negotiations between the parties both the plaintiff and the Medford Trust Company believed that the house Nos. 86–88 Gordon Street stood on lot 161 and continued in that belief until after August 1, 1921, when the plaintiff being about to sell under foreclosure proceedings was informed that the lot was vacant. The master found that the present market value of lot 161 is about $400. The plaintiff paid the Medford Trust Company for the assignment $3,800,— the principal of the mortgage debt, and $299.93 accrued interest and expenses incident to the foreclosure proceedings,— and received at the time an assignment of a policy of fire insurance, which had been issued to cover a building on that lot. When he learned that there was no building he abandoned the foreclosure proceedings. The master finds that he incurred expenses in connection with these proceedings amounting to $71. He further finds that the plaintiff is ready, willing and able to reassign the mortgage and note to the trust company.

There is but little controversy as to the facts. It is undisputed that the plaintiff and the representatives of the Medford Trust

Company believed when the assignment was made that the mortgage conveyed a lot on which a house had been built. It is well settled that where there is a mutual mistake between parties as to the subject matter of the contract, that there is no meeting of the minds, and that in a proper case equity will grant relief. "In such a case the equity for a rescission of the transaction does not depend upon any intentional fraud on the part of the grantor; and it is by no means limited to cases in which an action for deceit would lie at common law. . . . Relief is granted on the ground that it would be unconscientious to oblige a man, who has not been himself negligent or in fault, to adhere to his bargain, and to retain property which he was induced to purchase by a misapprehension as to a material and essential circumstance, which he was led into by the conduct of the other party." *Spurr* v. *Benedict*, 99 Mass. 463, 466. *Long* v. *Athol*, 196 Mass. 497. *Shapira* v. *Wildey Savings Bank*, 213 Mass. 498. *Dzuris* v. *Pierce*, 216 Mass. 132. *Hillside Co-operative Bank* v. *Cavanaugh, supra*. Nor is the fact that the note was indorsed to the plaintiff "Without recourse," and that the assignment recited that it is made "Without covenant or warranty expressed or implied and without recourse to it in any event" a bar to the plaintiff's right to rescission, as the mistake does not relate to the title but to the subject matter of the contract. *Spurr* v. *Benedict, supra*. *Keene* v. *Demelman*, 172 Mass. 17, 22. *Shapira* v. *Wildey Savings Bank, supra*.

The finding that "It was equally open to each of the parties to have ascertained the mistake at any time after the work of construction was begun" does not affect the right of the plaintiff to relief in equity on the ground that he was negligent in not having discovered the mistake before taking the assignment. An examination of the records in the registry of deeds would not have disclosed the mistake nor given any information respecting it. From the finding of the master the plaintiff was well warranted in believing that the facts relating to the premises conveyed by the mortgage were peculiarly within the knowledge of the Medford Trust Company; its agent inspected the buildings on the lots from time to time as they were in process of construction, and issued certificates for payments on the instalments as the work progressed; these facts, together with the

additional fact that the Medford Trust Company assigned a fire insurance policy purporting to cover a building on lot 161, and the failure of the master to find such negligence, make it plain that the plaintiff was not negligent in failing to detect the mistake before he took the assignment. *Rollins* v. *Quimby,* 200 Mass. 162. *Shapira* v. *Wildey Savings Bank, supra. Lynch* v. *Palmer,* 237 Mass. 150, and·cases collected at page 152.

There is nothing on this record to show that the parties cannot be put *in statu quo,* by the Medford Trust Company returning to the plaintiff the amount received, on tender of a reassignment of the note and mortgage.

If material, which we do not decide, the finding that the realty company is now financially unable to make payment of the note held by the plaintiff, does not affect the result. Besides, it was not in evidence that the company was able to pay it when the assignment was made.

The plaintiff's exception to the admission by the master of evidence offered by the Park Trust Company for the purpose of showing its reasons for the purchase of lots 107 and 157 has become immaterial, in view of the conclusion reached.

The cross bill filed by the Medford Trust Company praying for a reformation of the mortgages and deeds therein set forth "so as to correctly describe the lots of land included therein" cannot be maintained. As previously stated the rights of *bona fide* purchasers without notice have intervened. The Park Trust Company acquired as against the Medford Trust Company an unimpeachable title to lots 157, 158, 159 and 160.

A decree is to be entered ordering the defendant Medford Trust Company, upon tender to it of the note and reassignment of the mortgage, to pay the plaintiff the consideration received for the note and assignment, with costs from the Medford Trust Company. The cross bill is to be dismissed, with costs to the Park Trust Company against the Medford Trust Company.

*So ordered.*