### CHARLES S. KEENE *vs.* LEMUEL E. DEMELMAN.

Suffolk.   December 6, 1897. — September 14, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Contract — Warranty — Mistake — Rescission — Equity.*

If a contract for the sale of land, containing a warranty of the number of square feet of the land, is based upon an honest mistake on the seller's part as to the number of feet, which mistake is induced by the false, although not fraudulent, representation of a broker, who was either the buyer's agent in the transaction, or a person who had entered into a contract with the seller and then had assigned his rights. thereunder to the buyer, a court of equity has the power to permit the seller to rescind the contract on the ground of mistake, if the other party will not accept performance of the contract, omitting the particular stipulation inserted through the mistake.

BILL IN EQUITY, filed May 4, 1896, in the Superior Court, to restrain the prosecution of an action at law. At the hearing a decree was entered for the plaintiff; and the defendant appealed to this court. The facts appear in the opinion.

*H. P. Harriman & W. N. Buffum,* for the defendant.

*W. H. Coolidge,* (*G. S. Selfridge* with him,) for the plaintiff.

FIELD, C. J. The plaintiff owned a lot of land on which was an apartment house called the " Hotel Puritan," numbered 37 and 39 Burgess Street, Boston. The building covered the larger part of the lot, and the boundaries of the lot, as we infer, were pretty well defined. One Haines, then a member of the firm of Charles W. Cummings and Company, real estate brokers, in May, 1894, telephoned to the plaintiff, asking if he was the owner of Hotel Puritan, and the plaintiff answered yes. Haines then asked if it was still for sale, and the plaintiff answered yes. Haines then said that he thought he had a client who wanted such a piece of property, and asked the price, and the plaintiff gave the price as $15,500. Haines sent one Taylor, one of the firm's .clerks, to the City Hall to examine the assessors' books, and he reported that the lot contained 11,916 square feet. This was a mistake, and it occurred in this way. On the assessors' books the plaintiff was assessed " for Nos. 37 and 39 Burgess Street, Ward 20, Boston, 5,958 feet of land, $3,300 ; house, Puritan, $10,000,"

total, $13,300.   The clerk inferred that there were two lots, each containing 5,958 square feet, and he doubled this, making 11,916 square feet.    Haines thereupon, on May 7, 1894, prepared a writing, which was signed by the plaintiff and sealed, wherein the plaintiff agreed with Cummings and Company to hold the property until May 12, 1894, at noon, during which time he agreed to transfer it to Cummings and Company, or to such persons as they might designate, by insured title, for $7,500, to be paid at the time of sale subject to a mortgage for $8,000 then on the property.   The property was described as ." embracing land numbering 35 and 37 Burgess Street, Dorchester Dist., containing in all 11,918 ft. of land, and also double apartment house on same, known as Hotel Puritan, renting for $1,716 per year." The plaintiff testified that before he signed the writing he noticed the clause stating the number of feet, and asked Haines where he got that information, and Haines said, " At City Hall"; that he (the plaintiff) then said that this was the first time he knew of the number of feet.   The property was managed for the plaintiff by an agent, and the plaintiff personally had little to do with it.

Cummings and Company called the defendant's attention to various pieces of property which they had for sale, and among them was this property of the plaintiff, and the defendant, after some negotiations, said that if they would get an option from the plaintiff at the price of $14,500, he would look over the property. On May 28, 1894, the first option having expired, Cummings and Company procured a second option from Keene, wherein he agreed to hold the property until June 2, at noon, during' which time he agreed to sell it to them, or to such person as they might designate, for $6,500, to be paid at the time of sale, subject to a mortgage of $8,000.    The property was described as follows : ". Lots numbering 37 and 39 Burgess Street, containing 11,916 feet of land, and a double apartment house, land being assessed for $3,300, and house for $10,000."    In this description the numbers are right, the mistake of the first option in this respect having been corrected.    This option contained statements of the amount of the rents and stipulations concerning an apportionment of the taxes for 1894–95, and for paying the expenses of transfer; and it was shown to the defendant, who went out with

Haines and examined the property. Haines testified that the defendant "went all around the outside of the land first, and then examined the basement and first floor of No. 37, and the basement of No. 39." The defendant agreed with Cummings and Company to take the property, and on May 31, 1894, for the consideration of one hundred dollars, they indorsed on the option of May 28, 1894, a transfer of it to the defendant, or to any one he should name; "balance to be paid, excepting mortgage for $8,000, is $6,400, on or before June 4, 1894." On the 31st of May, or on June 1, the plaintiff was informed by Haines that he had sold the property, and Haines and the plaintiff went to the defendant's office, and the defendant showed the plaintiff a type written receipt which the plaintiff read and signed. The plaintiff testified that he then told the defendant that the quantity of land was not mentioned in his deed, and that until Haines told him he never knew the contents of the lot. The receipt is as follows:

"Boston, May 31, 1894.

"Received of L. E. Demelman, of Boston, Mass., receipt whereof is hereby acknowledged, $100, being part payment of houses 37 and 39 Burgess Street, Dorchester, warranted to contain 11,916 feet of land. Terms as follows: $8,000.00 to remain on mortgage, and balance, $6,400.00, to be paid upon transfer of title to be guaranteed by the Mass. Title Insurance Co.

"And I further agree to pay proportion of accruing taxes for 1894–5, also to pay all expenses of transfer except registering of deed.

"Witness my hand and seal this year and date above written.

"It is further agreed that papers pass on or before June 4th next.                    Charles S. Keene.   [Seal.]

"Witnessed by A. J. Haines."

The defendant paid the plaintiff $100 by check, and requested that the deed be made to Rachel A. Schwarzenberg.

The parties met on June 4, at the office of the Massachusetts Title Insurance Company, and the plaintiff tendered a deed signed by himself and his wife, in which the property was properly described, but it did not contain any statement of the number of feet of land. The defendant objected to it on this ground. The insurance company said that it could not give a policy assur-

ing the number of feet without a survey, and a survey was ultimately agreed upon, and it was found that the whole lot contained 5,888 square feet. The plaintiff offered to "call the trade off" on the ground of a mistake, and to pay back the $100, or to deliver the deed which had been tendered. The defendant refused to call the trade off or to accept the deed, but he was ready to pay the $6,400 called for by the receipt if he could receive a deed with a warranty that the land contained 11,916 square feet. A few hours afterwards the defendant brought an action at law against the plaintiff for a breach of the agreement contained in the receipt, and attached his property.

The present bill in equity avers, among other things, as follows: "At the trial of the said cause at common law in the Superior Court, Suffolk County, the justice thereof continued said cause in order that the defendant in said action, to wit, the said Keene, might bring this his bill of complaint, to restrain the further prosecution of said action at common law, inasmuch as, in the opinion of the said justice, the said Keene could not in an action at common law obtain the equitable relief that he could obtain by bringing this bill in equity." This is not denied in the answer. The Superior Court entered a decree in the present suit, which enjoined the defendant from prosecuting the action at law, or any other action for the same cause of action, and ordered the plaintiff to pay back to the defendant the $100, and from this decree the defendant appealed. The evidence was taken before a commission appointed under Chancery Rule XXXV. of the Superior Court, and was brought before us, but there are no findings of fact by the Superior Court.

We think that the Superior Court properly could have found on the evidence that Cummings and Company were not the agents of the plaintiff, but that they acted either independently for themselves, or as the agents of the defendant in procuring the second option. They transferred their rights under that option to the defendant. Such an option is not absolutely inconsistent with Cummings and Company's acting as the agent of the plaintiff; but on the face of the paper itself the parties appear to be acting, the one as a possible vendor and the other as a possible vendee. See *Bassett* v. *Rogers*, 162 Mass. 47 ; *S. C.* 165 Mass. 377. That court also could have found that the clause in the option and the

warranty in the receipt concerning the number of feet were in-
serted in consequence of information furnished by Haines; that
otherwise the plaintiff knew nothing about the number of feet,
and that the defendant knew that the plaintiff had no knowledge
on the subject except from the statement made by Haines. If
it be assumed that both the plaintiff and the defendant were
equally honest, and relied upon the assurances given by Haines,
and that Haines was honest, and relied on the statement made
by the clerk from an examination of the assessors' books, and
that the clerk was honest and the mistake he made was one
which, as counsel have agreed, any one might have made from
the form of the entry in the assessors' books, the result would
be that the defendant, the plaintiff, and Haines, as represent-
ing Cummings and Company in their dealings with one an-
other, acted under a common mistake of fact, and that the
plaintiff's statement concerning the number of feet of land in
the last option, and the warranty in the receipt, were induced
by the representations of Haines, which were false, but not
fraudulent.

The rights of Cummings and Company in the option were
transferred to the defendant, and the defendant as assignee
thereof took only the rights of Cummings and Company. The
subsequent receipt was given by the plaintiff directly to the
defendant, but the court could properly have found that this
receipt was given in pursuance of the option, and in consequence
of the assignment of it to the defendant.

The most serious difficulty is that the receipt contains an ex-
press warranty of the number of feet. It is argued that it is
common knowledge that a warrantor is bound by his warranty,
if it turns out to be false, although he believed the warranty to
be true at the time he gave it, and that it is immaterial that this
belief was induced by the representations of the other party to
the warranty, provided there has been no fraud. It seems that
the shape of the lot was such that the area could not be readily
estimated from a view, and we think that the Superior Court
could properly have found on the evidence that neither the
plaintiff nor the defendant was wanting in due care in relying
upon the representations of Haines regarding the number of feet
in the lot. There was no mistake on the part of any of the

parties concerning the identity of the house and land purchased and sold, but the difference in the number of square feet which the land was represented or warranted to contain and that which it did in fact contain cannot, we think, be regarded as immaterial. If the receipt had followed the language of the second option, and had only described the land as " containing 11,916 square feet," this might have been held to be an implied warranty, or a representation equivalent to a warranty. It may well be that the defendant should not have been compelled to accept the deed tendered. *Roberts* v. *French*, 153 Mass. 60. It does not, however, necessarily follow that he can hold the plaintiff to his warranty of the contents of the land. This is a warranty in connection with an agreement for a sale, and is a part of the agreement. There seems to have been no previous discussion about a warranty, and no oral agreement to give one. The word was first introduced by the defendant in the receipt. The plaintiff noticed it, but there was no evidence that the effect of it was considered by the plaintiff.

If the defendant had been permitted to prosecute his action at law, it is questionable what the measure of damages would have been. In some jurisdictions, the damages would be held on the evidence appearing in this case to be only the consideration which the defendant had paid with interest. *Baltimore Permanent Building & Land Society* v. *Smith*, 54 Md. 187. *Hammond* v. *Hannin*, 21 Mich. 374. See *Engell* v. *Fitch*, L. R. 4 Q. B. 659. The Superior Court proceeded on the ground that in this Commonwealth the damages in the action at law might be something more than the consideration paid, and that in equity the plaintiff had the right to rescind the contract if the defendant would not accept a deed of the premises as they were, on the ground of an honest mistake induced by the representation of the defendant's agent or assignor. The warranty being in an executory contract of sale, it is but a stipulation as a part of the contract. *Wiley* v. *Athol*, 150 Mass. 426, 434. The defendant was not bound to accept the deed tendered, because it did not convey land containing the requisite number of square feet, and therefore was not a performance of the contract. But the whole contract in the form in which it was executed the Superior Court properly could have

found was based on an honest mistake on the part of the plaintiff with regard to the number of feet of land, which mistake was induced by the false, although not fraudulent, representations of Haines, who was either the defendant's agent in the transaction, or a person who had entered into a contract with the plaintiff and then had assigned his rights under the contract to the defendant.

We are of opinion that a court of equity has the power to permit a party to rescind a contract entered into in the manner above set forth on the ground of mistake, if the other party will not accept performance of the contract omitting the particular stipulation inserted through the mistake. *Noble* v. *Googins*, 99 Mass. 231. *Spurr* v. *Benedict*, 99 Mass. 463. *Schramm* v. *Boston Sugar Refining Co.* 146 Mass. 211. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. Story, Eq. Jur. §§ 140 *et seq.*

Whether the facts alleged in the present bill could not have been pleaded in defence to the action at law is a question not before us.                                        *Decree affirmed.*