(33 Misc. Rep. 70.)

### WILLIAMS v. DAIKER et al.

(Supreme Court, Special Term, New York County. November, 1900.)

1. CONTRACT—ABANDONMENT—FRAUD.
    Where one contracted to furnish for a lump sum all the sand necessary for the brickwork of a building, basing his estimate on the statement of the builder as to the number of brick to be used, and without looking at the plans, which the builder told him he could examine, there was no such fraud as rendered the contract invalid because a greater number of bricks were necessary than stated by the builder.

2. SAME—PART PERFORMANCE.
    Where one contracts to furnish for a lump sum all the sand necessary for the brickwork of a building, and after furnishing part of the sand abandons the contract, he cannot recover for the sand furnished.

3. MECHANIC'S LIEN—STATEMENT.
    Where a mechanic's lien, as filed, claimed the furnishing of sand for an amount of brick greater than used in the building, the lienor having ceased delivering sand when the building was only half completed, the lien was invalid, though the lienor explained the inaccuracy as due to haste in drawing the papers.

Action by Elizabeth O. Williams against George Daiker and others. Judgment in favor of defendants.

Hobbs & Gifford (Charles A. Winter, of counsel), for plaintiff.
John E. Brodsky, for defendants.

BLANCHARD, J. This is an action brought by plaintiff to recover the value of a quantity of sand supplied by her assignor, Frederick Williams, to the defendant Daiker, and used by him in the construction of three houses at St. Nicholas avenue and 145th street, in the borough of Manhattan, city of New York; one on the corner and two adjoining on said street. In her complaint she alleges the delivery of 1,645 loads of sand; that the reasonable value thereof was $2 per load; that her assignor has received on account $1,250, and that there is now due him $2,040 and interest, for which sum she demands judgment. Prior to the commencement of this action plaintiff filed a lien against the property in question, which lien was discharged by giving an undertaking as provided by law, and the sureties are made parties to the action. The defendants claim that whatever material was furnished by plaintiff's assignor was in pursuance of a written contract between plaintiff's assignor and defendant Daiker. This contract is in evidence. By it plaintiff's assignor agreed to furnish sand for all stonework upon the buildings to be erected for $1\frac{3}{4}$ cents for each cubic foot of stonework, $500 for all brickwork on corner building, $300 for all plasterwork on corner building, $480 for all brickwork on adjoining buildings, and $300 for all plastering on adjoining buildings. It appears from the evidence that when the buildings were partially completed Williams discontinued the delivery of sand, and refused to supply more, on the ground, as he claims, that he was misled as to the quantity required through Daiker's misstatement as to the number of bricks to be used in the construction of the buildings. Defendants claim a breach of contract by Williams. Plaintiff meets this defense, and attempts to explain her failure to sue on the contract by trying to prove a fraudulent misstatement by Daiker of the quantity of stonework and brickwork necessary to complete the buildings in question. Williams claims to have relied on such alleged misstatement in entering into the contract, and contends that thereby the contract was vitiated.

The evidence does not satisfy me that the defendant Daiker was guilty of such misstatement as would amount to fraud, and warrant the court in holding the contract was annulled thereby. The evidence of the alleged fraud is furnished by the plaintiff's assignor, and is as follows: That before the contract was signed he called upon Daiker to get information in order to make an estimate, and that Daiker showed him the plans. He then told Daiker he would furnish sand for stonework at $1\frac{3}{4}$ cents per cubic foot of stonework, but that he would have to know the quantity of brickwork in the buildings in order to furnish an estimate in "lump sum." Daiker told him a "lump sum estimate" was required, and that the plans were there, and also at his architect's. He then asked Daiker how many bricks were to be used in the buildings, and being told by

Daiker one and one-third millions, he made his estimate on that basis. The architect of the buildings having been called by plaintiff as a witness, stated that 3,000,000 bricks were needed to complete the buildings, but that he had not imparted such information to Daiker. There is no proof that Daiker possessed such information, and there is no ground upon which to base an inference that he possessed it at the time of the conversation with Williams. Plaintiff would have it inferred that, as builder, Daiker must have known the quantity of bricks to be used. Daiker, however, might have awarded the contract for bricks in the same manner as he did the contract for sand; that is, in the requisite quantity to build the houses as planned, without mention of the specific number required. Had he taken the trouble to have the plans examined by some one who understood them if he did not, or had he gone to the architect for precise information, he would have been placed in a position where he could have given a correct estimate. This, as a prudent business man, he should have done. Daiker informed Williams that he could see the plans, but Williams did not choose to avail himself of the opportunity thus afforded. He had the same means for obtaining exact information that Daiker had, and he cannot now with reason ask this court to relieve him of the consequences of his own carelessness and inattention. Mr. Justice Field of the supreme court of the United States in the case of Slaughter's Adm'r v. Gerson, 13 Wall. 379, 383, 385, 20 L. Ed. 628, well states the principle which seems applicable here:

"The misrepresentation which will vitiate a contract * * * and prevent a court of equity from aiding its enforcement * * * must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge. * * * A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness."

The learned justice further says that the neglect of a party to avail himself "of any means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief." This case and the language quoted have met with the approval of the court of appeals of this state. Long v. Warren, 68 N. Y. 426, 432. The contract being valid, plaintiff cannot prevail in this action, as the failure by her assignor to continue the delivery of sand in accordance with the terms thereof constituted the breach.

The plaintiff must fail in this action for a further reason. In the lien filed claim is made for $4,682.79, composed of the following items: "Sand for 101,524 cubic feet of stonework, at one and three-fourths cents, $1,776.67; sand for 589 cubic yards of concrete, 15,903 cubic feet, at four cents, $636.12; sand for plastering, $600; sand for 3,200,000 bricks, at eighty cents per thousand, $2,560; sand for 9,000 cubic feet of concrete for cellar floor, at four cents, $360,"—making a total of $5,932.79, from which is deducted a cash payment on account of $1,250, leaving a "balance due October 9, 1896," of $4,682.79. The lien filed contains the statement that all work for which the claim is made has been actually performed, and all materials have been furnished, and the amount now due to claimant therefor is as

above stated, with interest from October 9, 1896. This statement of the account and the accompanying affidavit are grossly exaggerated, extremely inaccurate, and clearly false. This is admitted by the plaintiff both in the complaint and in the proceedings on the trial. The explanation of the false statement which plaintiff makes is that it was a miscalculation due to the papers having been drawn in a hurry. This explanation is not satisfactory. It fails to explain why plaintiff should have claimed more than twice the amount of his present demand. He must have known that he did not supply sand for 3,200,000 bricks, for he discontinued the supply of sand when the buildings were half completed, and the total number of bricks for the completed buildings did not exceed 3,200,000, the amount stated in the lien. Under the authorities the lien as filed cannot be sustained in this action. Goodrich v. Gillies, 66 Hun, 422, 21 N. Y. Supp. 400; Aeschlimann v. Presbyterian Hospital, 29 App. Div. 630, 53 N. Y. Supp. 998; Foster v. Schneider, 50 Hun, 155, 2 N. Y. Supp. 875. It follows from the views here expressed that defendants must have judgment.

Judgment for defendants.