JOSEPH LONG & another *vs.* INHABITANTS OF ATHOL.

Worcester.    October 2, 1907. — November 26, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To set aside contract, Mistake.  *Equity Pleading and Practice,* Bill, Master's report.  *Contract,* Cancellation, Implied: common counts.  *Evidence,* Of acts of other persons.  *Damages.*

A bill in equity to set aside and cancel a contract made by the plaintiff with a town for the construction of an extension of its sewer system will be sustained on demurrer, if it seeks a cancellation of the contract on allegations that the contract was procured from the plaintiff fraudulently by giving him as a basis for the proposed contract erroneous estimates of the work to be done, which largely understated its amount, and by keeping from the files of the town clerk and concealing from the plaintiff the maps, drawings, profiles and specifications in accordance with which the contract was to be and was made, and on alternative allegations that the contract was made under a mutual mistake of the parties caused by erroneous estimates made by the defendant's engineer and relied upon in good faith by the plaintiff, where the bill does not show upon its face that the plaintiff had such means of ascertaining the real facts or was guilty of such gross negligence or laches as to deprive him of his right to relief, and it does not appear by the bill that the defendant cannot be put substantially into its original position.

Where a suit in equity can be maintained on the ground of fraud or mutual mistake to set aside a contract with the defendant under which the plaintiff had done work and furnished materials before he discovered the fraud or mistake, the plaintiff, on proving his case, is entitled not only to a cancellation of the contract but also incidentally to recover damages in money for the work done and the materials furnished.

In a suit in equity to set aside and cancel a contract in writing made by the plaintiff
with a town for the construction of an extension of its sewer system, it appeared
that the contract was entered into under a mutual mistake caused by an error
of the engineer employed by the defendant to make the estimate that was fur-
nished to the plaintiff and other contractors for them to base their bids upon,
that the plaintiff had access to correct profile plans and drawings and to printed
specifications, and it would have been possible for a skilled engineer, by cor-
rectly scaling these plans, to ascertain and correct the mistakes made in the
estimate furnished by the defendant to the plaintiff and the other bidders, but
the mistakes could have been discovered only by one skilled in such matters
and only by careful and accurate scaling and processes of computation, that
the mistakes were unintentional and all parties were ignorant of any serious
discrepancies in the estimate.   The master to whom the case was referred found
that the plaintiff was not grossly negligent in not examining the plans more
minutely and that he had the right to assume that the engineer's estimate was
at least approximately correct and to rely thereon in making up and submitting
his bids.   The master also found that the statements in the engineer's estimate
were not even approximately correct and that the amount of excavation actu-
ally required was so much in excess of that shown by the erroneous estimate
that the plaintiff was justified in refusing to proceed further with his contract.
It appeared that, by the terms of the contract sought to be set aside, the plain-
tiff covenanted to do the work " in strict accordance with the maps, drawings,
profiles and specifications prepared therefor and on file in the office of the town
clerk, . . . all of which are to be considered as part and parcel of these pres-
ents and to be construed therewith," and further agreed " that the amounts and
quantities of materials to be furnished and work to be done, as stated in the
notice to bidders, governing the making of proposals for said work, are approxi-
mate only; that he is satisfied therewith in determining the prices according to
which he agrees to do the work required by this contract; that he has judged
for himself as to all circumstances and conditions affecting the cost of the per-
formance by him of the work."   Held, that there was a material mistake as to
the basis upon which the contract was made which entitled the plaintiff to the
relief sought, and that he was not barred by his covenants above quoted from
his right to have the contract which contained those covenants set aside as
founded upon a mutual mistake of fact; nor was the plaintiff's right to relief
barred by negligence in accepting the erroneous estimate without a more minute
examination of the plans, the findings of the master on this subject having been
made on evidence which was not reported.
In a suit in equity to set aside and cancel a contract in writing made by the plain-
tiff with a town for the construction of an extension of its sewer system, where
the plaintiff was entitled to relief on the ground that there was a mutual mistake
of fact as to the basis upon which the contract was made, it was held, that, by
ordering a cancellation of the contract and compelling the defendant to pay the
plaintiff the fair value of the work done and the materials furnished by him be-
fore the discovery of the mistake, the defendant in a legal sense would be put
in statu quo.
In a suit in equity to set aside and cancel a contract in writing made by the plaintiff
with a town for the construction of an extension of its sewer system, where it
appears that there was a mutual mistake of fact as to the basis upon which the
contract was made and the plaintiff is entitled not only to have the contract
cancelled but also to be paid by the defendant the fair value of the work done
and the materials furnished by him before the discovery of the mistake, the

fact, that the result of the work done by the plaintiff was to show that the necessary excavation was more difficult and expensive than had been anticipated, so that the bidders for a new contract would know of these difficulties and the defendant thus would be deprived of an inequitable advantage, does not prevent the defendant from being put *in statu quo.*

At a hearing in equity before a master, if one of the parties is apprehensive that a ruling in the draft report of a master, which in substance is correct, may receive an interpretation adverse to him, he should ask the master to make a more definite ruling on the subject, and in the absence of such a request, he cannot make the want of such definiteness the basis of a subsequent objection and exception.

In a suit in equity to set aside and cancel a contract in writing made by the plaintiff with a town for the construction of an extension of its sewer system on the ground that the contract was made under a mutual mistake of fact caused by an erroneous estimate made by the defendant's engineer and relied upon in good faith by the plaintiff, it is competent for the plaintiff to show that he acted on the mistake caused by the errors in the estimate and relied upon the estimate as correct, and on this issue he may show that other bidders on the contract also relied on the estimate.

Exceptions to a master's report founded on the rulings of the master in admitting and rejecting evidence will not be sustained unless a material error is shown which has been prejudicial to the excepting party.

In a suit in equity to set aside and cancel a contract in writing made by the plaintiff with a town for the construction of an extension of its sewer system, where it appears that there was a mutual mistake of fact as to the basis upon which the contract was made and the plaintiff is entitled not only to the cancellation of the contract but also to be paid by the defendant the fair value of the work done and the materials furnished by him before the discovery of the mistake, the measure of the plaintiff's damages is not the increase in value of the defendant's land by reason of the plaintiff's work and materials, as it is in a case where the plaintiff has put a structure on the land of another in good faith but not in accordance with the terms of a binding contract between the parties, and a finding of a master settling the plaintiff's damages upon the basis of the actual cost to him of the work and materials, to which it did not appear that any objection was made, here was sanctioned by an order that the damages so found should be paid.

BILL IN EQUITY, filed in the Supreme Judicial Court May 14, 1903, to set aside and cancel a contract made by the plaintiffs with the town of Athol for the construction of an extension of the sewer system of that town and to recover the fair value of the work done and the materials furnished by the plaintiffs for the defendant.

The case came on to be heard, upon the report of a master and the exceptions of the defendant thereto, before *Braley,* J., who reserved the case for determination by the full court, such decree to be entered as justice and equity might require.

There also was an appeal by the defendant from an interlocutory decree overruling its demurrer to the bill.

*H. Parker & F. N. Nash*, for the defendant.

*H. W. Ogden*, for the plaintiffs.

SHELDON, J.   The defendant appealed from the interlocutory order overruling its demurrer to the bill, and its counsel have discussed some of the questions naturally arising thereon.   As however all these questions are raised, and perhaps more advantageously for the defendant, upon the master's report and the exceptions thereto, and as the appeal has not been argued specifically, it need not be considered at any great length.   We think it plain that the bill as amended sets forth a good cause of action.   It is drawn with a double aspect, seeking to obtain a cancellation of the contract of the plaintiffs with the defendant, first upon the ground that it was fraudulently obtained from the plaintiffs by giving to them as a basis for the proposed contract erroneous estimates of the work to be done, which largely understated the amount thereof, and keeping from the files of the town clerk of Athol and concealing from the plaintiffs the maps, drawings, profiles and specifications in accordance with which the contract was to be and in fact was made ; and secondly upon the ground that the contract was made under a mutual mistake of both parties arising from the fact that the estimates upon which the plaintiffs made their bid and upon the faith of which they entered into the contract, which estimates were made by an engineer employed by the defendant for that purpose, and were given to the plaintiffs by the defendant as correct, were erroneous and materially underestimated the amount of the work to be done.   If the proof came up to the averments of the bill on either of these grounds it would entitle the plaintiffs to relief.   It would be enough if either of the grounds alleged was made out.   *Redgrave* v. *Hurd*, 20 Ch. D. 1.   *Davies* v. *London & Provincial Ins. Co.* 8 Ch. D. 469.   *Newbigging* v. *Adam*, 34 Ch. D. 582.   *Trail* v. *Baring*, 4 DeG., J. & S. 3168, affirming *S. C.* 4 Giff. 485.   *Rawlins* v. *Wickham*, 3 DeG. & J. 304.   *Daniel* v. *Mitchell*, 1 Story, 172.   *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189.   *Motherway* v. *Wall*, 168 Mass. 333.   *Keene* v. *Demelman*, 172 Mass. 17.   *Boles* v. *Merrill*, 173 Mass. 491.   *Paine* v. *Upton*, 87 N. Y. 327.   *Winnipisseogee Lake Co.* v. *Perley*, 46 N. H. 83.   The bill could be maintained both for a cancellation of the contract and for the recovery of what-

ever money might be incidentally necessary to afford full relief. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. *Davis* v. *Peabody*, 170 Mass. 397. *Weeks* v. *Currier*, 172 Mass. 53. *Franklin* v. *Greene*, 2 Allen, 519. Nor does the bill show upon its face that the plaintiffs had such means of ascertaining the real facts or were guilty of such gross negligence in relation thereto as to deprive them of the right to relief for this reason. *Conner* v. *Welch*, 51 Wis. 431. The statement of Jessel, M. R. upon this subject in *Redgrave* v. *Hurd*, 20 Ch. D. 1, was quoted and followed in *Smith* v. *Land & House Property Corp.* 28 Ch. D. 7, 17, and in *Karberg's case*, [1892] 3 Ch. 1, 13. Nor does the bill show that the plaintiffs were guilty of such laches as to lose their right to relief. Their right to cancellation depended upon the refusal of the defendant to correct the mistake, so far as the bill rested upon that ground; *Keene* v. *Demelman*, 172 Mass. 17, 23 ; and the bill seems to have been brought promptly after the discovery of the mistake and the defendant's refusal to rectify it. *Rawlins* v. *Wickham*, 3 DeG. & J. 304. It does not appear by the bill that the defendant cannot as to all essential matters be put substantially into its original position under the rule of *Thayer* v. *Turner*, 8 Met. 550, and *Snow* v. *Alley*, 144 Mass. 546. See *Drohan* v. *Lake Shore & Michigan Southern Railroad*, 162 Mass. 435 ; *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1, 4, 5. We cannot doubt that the demurrer was rightly overruled. The cases which hold that without a cancellation of the contract the plaintiffs would be held to performance in conformity to its terms and could not set up the antecedent error are beside the point, and need not be considered.

It sufficiently appears by the master's report that, although no fraud was practised upon the plaintiffs, their contention that the contract was entered into under a mutual mistake caused by the error of the engineer employed by the defendant to make the estimate that was furnished by the defendant to the plaintiffs and other contractors for them to base bids upon, was proved. The plaintiffs had access also to correct profile maps and drawings and to printed specifications; and it would have been possible for a skilled engineer, by correctly scaling these plans, to ascertain and correct the mistakes made in the estimate furnished by the defendant to the plaintiffs and other

bidders. It is manifest however and, as we understand, is not disputed, that the mistakes could have been discovered only by one skilled in such matters, and only by careful and accurate scaling and processes of computation. The master has found that the officers of the defendant acted in good faith in furnishing this estimate, and believed that the information given therein was at least approximately correct, and were ignorant that any material errors had been made in compiling it; that the mistakes made were unintentional and that all parties were ignorant of any serious discrepancies in the estimate, but that the plaintiffs were not grossly negligent in not examining the plans more minutely, and had the right to assume that the engineer's estimate was at least approximately correct, and to rely thereon in making up and submitting their bids. He also has found that the statements of this estimate were not even approximately correct; that the amount of excavation required of the plaintiffs was so much in excess of that shown by the erroneous estimate that the plaintiffs were justified in fact in refusing to proceed further with their contract.

Upon these findings taken by themselves, under the circumstances which appear here, it is manifest, upon the cases already referred to, that the plaintiffs are entitled to the relief which they seek, unless this should be refused to them by reason of some of the specific objections of the defendant, or unless it should appear, upon some of their exceptions, that there has been material error on the part of the master; and we proceed to consider these questions.

The defendant contends that there was no right of cancellation by reason of the issuing of the paper containing the inaccurate estimates, because this was put forth in good faith and its inaccuracy was unknown and unsuspected by the defendant's officers until after the plaintiffs had begun their work, and because the plaintiffs in their contract expressly covenanted to do the work " in strict accordance with the maps, drawings, profiles and specifications prepared therefor and on file in the office of the town clerk, . . . all of which are to be considered as part and parcel of these presents, and to be construed therewith," and further in the same contract in express terms admitted and agreed " that the amounts and quantities of materials to be furnished and work to

be done, as stated in the notice to bidders, governing the making of proposals for said work, are approximate only," and that they were satisfied therewith in determining the prices for doing the work required by the contract, and that they had judged for themselves as to all conditions affecting the cost of the performance of the work. And the defendant contends that the plaintiffs, after having made these express stipulations, cannot now, upon discovery of the mistake which was common to them and the defendant, assert that the contract was represented to them to be an agreement to do the work according merely to the erroneous estimate. *Sullivan* v. *Sing Sing*, 122 N. Y. 389. *Williams* v. *Daiker*, 68 N. Y. Supp. 348. Certainly, the plaintiffs cannot make such an assertion. As long as the contract remains in force they are bound by its provisions. *Stuart* v. *Cambridge*, 125 Mass. 102. *Lentilhon* v. *New York*, 102 App. Div. (N. Y.) 548. But the equitable right to avoid an agreement which has been entered into upon a mutual mistake as to material facts, knowledge of which would have prevented the parties from making it, is not to be defeated by reason merely of the stringency of the covenants which it contains. We have found nothing in the New York decisions already referred to inconsistent with this position. If, as the defendant contends on the authority of *Weeks* v. *Trinity Church*, 56 App. Div. (N. Y.) 195, and *Gearty* v. *Mayor of New York*, 171 N. Y. 61, the decision in *Sullivan* v. *Sing Sing* could be construed as denying such a right of cancellation, we should not be willing to follow it.

It is contended also that the agreement should not be set aside by reason of this mistake, because it is not to be treated as a mistake of fact. The paper it is contended was given to the plaintiffs merely as an estimate ; the defendant, though believing it to be accurate, did not attempt to pass off its belief as knowledge ; *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403 ; it did nothing to prevent a full investigation. *Parker* v. *Moulton*, 114 Mass. 99. It contends substantially in the language of this court in *Schramm* v. *Boston Sugar Refining Co.* 146 Mass. 211, 216, that a contract is not to be set aside merely because before the making thereof there may have been an honest expression of opinion, or an honest statement of a fact not purporting to be as of knowledge, that the thing contracted for will turn out better

than it proves to be ; and it cites also *Comins* v. *Coe*, 117 Mass. 45 ; *Powers* v. *Mayo*, 97 Mass. 180 ; *Gordon* v. *Parmelee*, 2 Allen, 212 ; *Mooney* v. *Miller*, 102 Mass. 217 ; *Roberts* v. *French*, 153 Mass. 60 ; *Brownlie* v. *Campbell*, 5 App. Cas. 925, 936, 937 ; and *Smith* v. *Chadwick*, 9 App. Cas. 187. But this argument overlooks the fact that in the case at bar the erroneous estimate was the basis of the plaintiffs' bid and the ground of their making the contract ; it was a material element in the minds of both parties ; it was given by the town both to the plaintiffs and to all other contractors who asked for information on the subject ; both parties regarded it as approximately correct, and the plaintiffs relied upon it ; and the errors were unknown to all parties until after the execution of the contract. The plaintiffs' admission in their contract as to the character of the quantities stated in the estimate went no further than that these were approximate only, and the defendant seems to have been content with this ; but the master has found that they were not even approximately correct. There was here a material mistake as to the very basis upon which the contract was made. *Spurr* v. *Benedict*, 99 Mass. 463. And for that mistake the defendant was in the first instance responsible. *Keene* v. *Demelman*, 172 Mass. 17, 21. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. The case is not within the contention of the defendant as to this point.

Nor was there such negligence of the plaintiffs in accepting the erroneous estimate without employing the other means of knowledge furnished by the defendant as to bar their relief as matter of law. The master has found that the maps and plans were in the selectmen's rooms, which were used also by the town clerk, that the plaintiffs saw them there and had full opportunity to inspect them and to scale them for the purpose of comparing them with the estimate, but that the plaintiffs were not grossly negligent in not examining the plans more minutely, and had a right to assume that the engineer's estimate was at least approximately correct. The defendant relies here upon the many cases in which it has been held that one to whom fraudulent representations are made has no right to rely upon them if the facts are within his observation or if he has equal means of knowing the truth. *Savage* v. *Stevens*, 126 Mass. 207. *Brown* v. *Leach*, 107 Mass. 364. *Salem India Rubber Co.* v. *Adams*, 23

Pick. 256. *Poland* v. *Brownell*, 131 Mass. 138. *Brady* v. *Finn*, 162 Mass. 260. This to be sure presents usually a question to be passed upon by the jury at law or by the master here. *Arnold* v. *Teel*, 182 Mass. 1. *Whiting* v. *Price*, 172 Mass. 240, and cases cited. And the defendant admits that negligence as a defense in cases of fraud has been in danger of being pushed too far. *Arnold* v. *Teel*, 182 Mass. 1. *Holst* v. *Stewart*, 161 Mass. 516, 522. *Way* v. *Ryther*, 165 Mass. 226, 229. But it contends that one who has merely put forth in good faith an inaccurate estimate should be allowed to avail himself fully of the negligence of one who claims to have been misled by this innocent mistake. *Slaughter* v. *Gerson*, 13 Wall. 379. *Farrar* v. *Churchill*, 135 U. S. 609. *Farnsworth* v. *Duffner*, 142 U. S. 43. *Long* v. *Warren*, 68 N. Y. 426. *Conner* v. *Welch*, 51 Wis. 431. But it must be remembered that the only finding of the master upon this point is that a skilled engineer, by correct scaling of the maps and drawings, might have ascertained the errors in the engineer's estimate. It is not found that examination by others would have disclosed them. The engineer's estimate was erroneously supposed by both parties to be a correct rendering into ordinary language of the hidden sense of the maps, plans and drawings, and the defendant furnished it to the plaintiffs as such, merely requiring the plaintiffs to stipulate that its figures were approximate only. The master may have found on the evidence that the case stood as if the correct plans had been expressed in some foreign language or in hieroglyphics which only some peculiarly skilled persons could translate, and that the defendant had innocently furnished the plaintiffs with a materially incorrect version of them. Nor do we know what the evidence was upon which the master made his findings. We cannot say that the plaintiffs did not have under the circumstances the right which the master has found that they did have, or that the finding that they were not grossly negligent in this matter is not enough to protect them. This was substantially the rule adopted in equity in *Redgrave* v. *Hurd*, 20 Ch. D. 1; *Smith* v. *Land & House Property Corp.* 28 Ch. D. 7, 17; *Karberg's case*, [1892] 3 Ch. 1, 13; *Aaron's Reefs, Ltd.* v. *Twiss*, [1896] A. C. 273, 279 And see *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 201; *Keene* v. *Demelman*, 172 Mass. 17, 21.

And for the reasons already stated, the defendant's contention that, there having been on its part no fraud or concealment or inducement to omit investigation, the plaintiffs cannot go behind the conditions of the contract and their bid to assert that they intended to bid upon the estimate and not upon the maps, plans and specifications cannot be supported. This contention is correct so long as the contract remains in force; it is not correct when cancellation is sought on the ground of a material mistake of both parties in the basis of the contract. Upon the findings of the master, there is nothing in *Blaiberg* v. *Keeves*, [1906] 2 Ch. 175, or in *Brownlie* v. *Campbell*, 5 App. Cas. 925, to help the defendant here.

But it is argued that the contract cannot now be cancelled, because the defendant cannot be put *in statu quo*. The master's finding as to this is that the plaintiffs " could not by rescinding their contract place the defendant in the same condition that it was in before the beginning of the work, or in other words, could not undo the work of construction, so far as it had been done, and reclaim the materials furnished and labor performed." This is far from being an unqualified finding that the defendant cannot be put *in statu quo*. If the contract is set aside and the defendant is held to pay the plaintiffs for the fair value of the materials and labor furnished by the latter, and no more, we do not see why the defendant is not in a legal sense put *in statu quo*. This was the rule adopted at law in *Bailey* v. *Marden*, 193 Mass. 277, *Brown* v. *Woodbury*, 183 Mass. 279, *Posner* v. *Seder*, 184 Mass. 331, 333, *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298, and *Fitzgerald* v. *Allen*, 128 Mass. 232. The same rule has been adopted in equity. *Franklin* v. *Greene*, 2 Allen, 519. *Davis* v. *Peabody*, 170 Mass. 397. *Weeks* v. *Currier*, 172 Mass. 53. *Old Dominion Copper Co.* v. *Bigelow*, 188 Mass. 315, 329. The case comes really within the rule laid down in *Snow* v. *Alley*, 144 Mass. 546.

But the defendant contends that the cancellation of this contract and the consequent necessity of paying upon a *quantum meruit* for what has been done by the plaintiffs, prevents it in another way from being put *in statu quo*. The result of the work done by the plaintiffs was to show that the necessary excavation was more difficult and expensive than was anticipated; and the total expense of the work has been increased accordingly. The

result of this is that a new contract for the same work could not have been let on so favorable terms for the defendant as if this fact had not been brought to light; and so the defendant says that it neither has been nor could be put into as favorable a condition as that which it at first occupied. But it seems to us that this amounts only to saying that the real facts which have become known have operated to deprive it of an inequitable advantage which it formerly enjoyed over prospective contractors for this work by reason of the general ignorance of the character of the soil and the difficulty of excavation in it. It was perhaps unavoidable, while these matters remained unknown, that one of the parties should derive a certain degree of advantage or of detriment from that fact; the loss of that advantage to the one and the removal of that detriment to the other is not a change of which either party has the right to complain. It does not in our judgment prevent the defendant from being put *in statu quo.*

It is contended that the master erred in ruling that the burden of proving why the plaintiffs complained about the extra depths of excavation and abandoned the contract, rested upon the defendant. But it does not sufficiently appear that he did so rule. In his report, after stating the defendant's contention upon this subject, he says: " I find that the defendant did not sustain the burden of that contention, . . . but I find that the real reason for the complaint and action of the plaintiffs was the result of the errors made by " the engineer " in scaling said profile plans and preparing said engineer's estimate." The latter part of this finding, which involved the real issue, seems to have been made independently of any question of the burden of proof. The master's language in the opening of the sentence, though it perhaps may have contained an intimation that he wrongly threw the burden upon the defendant, does not seem to us to be decisive of this. If the defendant was apprehensive that he did so rule, it might have settled the question by a request for a ruling, and if that were refused might have filed an objection and an exception founded on it. *O'Brien* v. *Keefe,* 175 Mass. 274. It has not done so, and we cannot say that the master made the ruling of which it complains.

The exceptions to the testimony of the witness McKenzie ought not to be 'sustained. It was competent to show that the

plaintiffs acted on the mistake caused by the errors in the estimate, and relied on the latter as correct. And when he spoke of what was in the mind of himself and the plaintiffs it sufficiently appears that he referred, and was understood to refer, to what was in his own mind as representing them. The admission of testimony that the other bidders also relied on the estimate came under the rule of *Cass* v. *Boston & Lowell Railroad*, 14 Allen, 448, and *Lane* v. *Boston & Albany Railroad*, 112 Mass. 455.

We do not find that any of the other exceptions to the rulings of the master in admitting or rejecting evidence should be sustained. The language of Bigelow, C. J., in *Fisher* v. *Plimpton*, 97 Mass. 441, 443, and of the present Chief Justice in *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 23, as to the necessity of showing a really material error in this respect, such as has been prejudicial to the excepting party, is peculiarly applicable to evidence taken before a master in a case like this.

It is not necessary to consider the other exceptions to the master's report in detail. Most of them are disposed of by what has been said already; and none of the others can be sustained. The master rightly refused to pass upon the additional questions of fact requested by the defendant. The contract having been avoided, the plaintiffs could recover upon a *quantum meruit* for all that they had done; and we do not find that any objection was made to the master's settling this upon the basis of actual cost to the plaintiffs. Neither the cost nor the value of the so called extra work was material. The case was not like the cases in which a plaintiff who has substantially but not exactly done the work called for by the terms of a contract to put a structure upon another's land is allowed, within the limits of the contract price, to recover for the benefit thus conferred upon the latter; for there the contract is not abrogated. *Gillis* v. *Cobe*, 177 Mass. 584. *Blood* v. *Wilson*, 141 Mass. 25. *Hayward* v. *Leonard*, 7 Pick. 181.

A decree should be entered overruling all the exceptions to the master's report, ordering that the contract between the plaintiffs and the defendant and the bond accompanying the same be delivered up and cancelled, and that the defendant pay to the plaintiffs the sum found by the master with interest from the filing of the bill; and for costs.

*So ordered.*