D. Federico Co., Inc. *vs.* Commonwealth.

Suffolk.   November 14, 1979. — January 28, 1981.

Present: Armstrong, Rose, & Kass, JJ.

*Contract*, Public works, Modification, Warranty, Mistake.

A construction contractor was not entitled to recover from the Commonwealth an amount exceeding the contract unit price for excavation and replacement fill necessary to lay a proper base for roads constructed within a campsite at a State park, on a claim that the actual cost exceeded the bid price because of a substantial underestimation by the Commonwealth's designer of the amount of excavation and replacement fill that would be required, where it did not appear that the designer's estimates were the very basis of the contract such as to amount to a material mistake of fact, where the contract terms specifically precluded warranty of or reliance on the furnished estimates, and where the contractor failed to make a timely claim for additional compensation pursuant to the terms of the contract. [249-253]

Civil action commenced in the Superior Court on June 13, 1975.

The case was heard on a master's report by *Tempone, J.,* a District Court judge sitting under statutory authority.

*Paul S. Carter* (*Martin S. Cosgrove* with him) for the plaintiff.

*Kevin M. Kirrane,* Assistant Attorney General, for the Commonwealth.

Armstrong, J.  The plaintiff, a construction contractor, brought this action to recover additional compensation which it claims to be owed for its work in the development of a campsite at Wompatuck State Park in Hingham.  From

a judgment, entered on a master's report, dismissing the complaint, the plaintiff appeals.

The master's findings are not in dispute; and our function on appeal, like that of the judge who ordered the entry of judgment, is to determine what disposition of the case is legally required by the master's findings.[1] *Central Tow Co.* v. *Boston*, 371 Mass. 341, 342 n.3 (1976).

The dispute arose because of a substantial underestimation by the Commonwealth's designer, a private engineering firm, of the amount of excavation and replacement fill ("ordinary borrow") that would be required to lay a proper base for the roads to be constructed within the campsite. No test borings or soil analyses were done for the purposes of accurate estimation;[2] the designer instead based his estimate on an assumption that, because roads had been constructed previously without difficulty in the same vicinity (the campsite had been used earlier as a naval ammunition depot), it would not be necessary to excavate beyond an average depth of twelve inches. In fact excavation revealed substantial amounts of unsuitable organic material and nested boulders, all of which had to be removed; and instead of excavating 85,650 cubic yards of material, the amount the designer had estimated, the plaintiff was required to excavate 215,492 cubic yards of material. The amount of ordinary borrow required to be brought in from other locations amounted to 278,493 cubic yards, rather than the 30,150 cubic yards which had been estimated by the designer.

The excavation and borrow items were bid on the basis of unit prices. The plaintiff had bid $1.60 per cubic yard for excavation and $ .90 per cubic yard for borrow. Multiply-

---

[1] We assume that the plaintiff's motion to amend its complaint to conform to the findings made by the master would have been allowed if those findings had disclosed a basis for recovery. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977); *Jessie* v. *Boynton*, 372 Mass. 293, 294-296 (1977).

[2] There were some borings done in locations where comfort stations were to be built.

ing these figures by the applicable estimates, the plaintiff had included as components of its total bid for the entire project ($2,113,597.20) $137,040.00 for excavation and $21,135.00 for borrow, a total of $158,175.00 for the two. In fact, because the work in those two categories so greatly exceeded that which had been estimated, the plaintiff has been paid a total, on the basis of unit prices, of $595,430.90 for the excavation and borrow items combined.

The master, however, found that that sum did not adequately compensate the plaintiff for the work it did in excavating and filling with borrow, and that fair compensation to the plaintiff for its work in those categories would have been $913,522.40.[3] The plaintiff advances two theories why it is entitled to the difference of $318,091.50.

The first is based on a finding that "[t]he earth moving operation was an entirely different type of job in scope and magnitude from the one that Federico offered to perform in its sealed proposal." This finding, the plaintiff argues, brings the case within the authority of *Long* v. *Athol*, 196 Mass. 497 (1907), where the plaintiff was permitted to rescind a sewer-laying contract when it became apparent that the excavation estimates which had been the basis of the bidding were, due to a calculation error by the town's engineer, materially erroneous. The "mistake" here is of a different type: a guess or assumption made from insufficient factual data, rather than an erroneous interpretation of known data. Nothing in the master's report suggests that the flimsy basis for the engineer's estimates was not available to bidders for the asking (contrast, in this respect, *Alpert* v. *Commonwealth*, 357 Mass. 306 [1970]); but all parties apparently proceeded content to rely on the estimates rather than go to the trouble of making test borings. The contract made clear that the excavation unit

---

[3] The difference arises because of the difficulties encountered in excavating to much greater depths; the necessity for using heavier equipment; the necessity for blasting of rock and use of mining methods; the greater distances that excavated material and borrow had to be transported; etc.

price was to control regardless of actual quantities and covered peat-removal, boulder-removal, and ledge-blasting; it also made clear that the estimates shown for unit-price items were for purposes of bid-comparison only and were not guaranteed. It cannot be said, therefore, that the estimates were the very basis of the contract, such as to amount to a material mistake of fact which would have permitted unilateral rescission; and, in any event, the plaintiff did not purport promptly to rescind, as in the *Long* case, but instead continued to work under and in accordance with the terms of the contract until the work was completed. In these circumstances the *Long* case has no particular bearing.

The second theory is that the Commonwealth impliedly warranted the accuracy, not to the precise yard but as fair approximations (compare *Muir Bros.* v. *Sawyer Constr. Co.*, 328 Mass. 413, [1952]), of its estimates, and that the plaintiff is entitled to damages for breach of that warranty. The provisions of the contract, however, explicitly preclude such a warranty: the provision mentioned earlier, to the effect that the estimates were furnished for bid-comparison purposes only, goes on to state that "[e]stimated quantities shown for unit price items . . . are not guaranteed"; another provision requires the bidders to declare "that in regard to the conditions affecting the work to be done and the labor and materials needed, this proposal is based solely on their own investigation and research and not in reliance upon any plans, surveys, measurements, dimensions, calculations, estimates, borings or representations of any employee, officer or agent of the Commonwealth." The master dismissed the latter provision as "inconsistent with the express approximations" (i.e., the estimates in question) furnished by the Commonwealth "for bidding purposes," and found that it was "impossible" for bidders, who had three weeks to prepare their bids, to do independent test borings; but that misses the point that the object of such a provision, one to which the plaintiff assented by bidding and contracting, was to preclude a warranty of the ac-

curacy of estimates and to place on the bidder the risk that subsoil conditions might be more adverse than the parties had hoped. Our cases have recognized the possibility of an implied warranty of estimates in some circumstances (see, e.g., *M.L. Shalloo, Inc.* v. *Ricciardi & Sons Constr., Inc.*, 348 Mass. 682, 686-688 [1965]; *Alpert* v. *Commonwealth*, 357 Mass. 306, 321 [1970]), but not where the contract terms specifically precluded warranty of, or reliance on, the furnished estimates. See, e.g., *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 201-202 (1945); *Daniel O'Connell's Sons* v. *Commonwealth*, 349 Mass. 642, 647 (1965). There was no suggestion in the master's findings that the Commonwealth concealed the existence of borings reports or soil analyses which would have revealed the subsoil conditions or shown the unreliability of the estimates, as was the fact in the *Alpert* case, 357 Mass. at 319-321.

There is a further reason that the plaintiff may not recover. It is a general rule in public construction contracts that, "if the contractor encounters materially different conditions from those predicted by the plans, specifications, preliminary borings and estimates, the contractor must follow the procedures spelled out in the contract . . . to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories." *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 460 (1980). The present contract is not an exception.[4] No timely claim for extra compensation was made, and the master found that there was no justification for the failure. In these circumstances any right the plaintiff may have had

---

[4] Article XVI(g) provided that "[i]f the Contractor claims compensation for a change not ordered as aforesaid, *or for any damages sustained*, he shall on or before the first working day following commencement of any such work or sustaining of any such damage submit to the Architect, the Clerk of the Works and the Department a written statement of the nature of such work or damage sustained. Any work performed or damages sustained prior to the time specified above, even though similar in character, will not be considered as warranting compensation, it being clearly

D. Federico Co., Inc. *v.* Commonwealth.

to extra compensation was not perfected, and the subsequent claim was barred. *Lewis* v. *Commonwealth*, 332 Mass. 4, 6-7 (1954). *Chiappisi* v. *Granger Contr. Co.*, 352 Mass. 174, 177-178 (1967). *Marinucci Bros.* v. *Commonwealth*, 354 Mass. 141, 144-145 (1968). *State Line Contractors, Inc.* v. *Commonwealth*, 356 Mass. 306, 317-319 (1969). The master's finding that unspecified "[r]epresentatives of the Commonwealth agreed that 'additional compensation would be agreed to where necessary'" fell short of finding a "clear, decisive and *unequivocal* conduct on the part of an *authorized* representative of the agency indicating that it would not insist on adherence to the [extracompensation provisions of the] agreement" (emphasis supplied). *Glynn* v. *Gloucester, supra* at 462. Moreover, the contract provided that "[n]o oral . . . conversations with any officer, agent or employee of the Commonwealth . . . before or after the execution of the contract shall effect [*sic*] or modify any of the terms or conditions of the contract . . . ."

There was no error in the judgment dismissing the complaint.

*Judgment affirmed.*

---

understood that the commencement of any such work or the sustaining of any such damage will be recognized only when and as submitted in writing in accordance with the requirements of this Article" (emphasis supplied). The master found that no claim for extra compensation was submitted in accordance with the requirements of Article XVI(g).