GILMORE ET AL. *v.* BOARD OF COUNTY COMMRS. OF
HOCKING Co.

*"Public improvement"* construed—*Contract to construct county
ditch a private contract—Sections 6443 et seq., General
Code—Reformation or rescission by court of equity—Mistake in computing excavation—Quantum meruit.*

1. The construction of a ditch, undertaken by a Board of
County Commissioners, on the petition of land owners,
in accordance with the provisions of Section 6443 *et seq.,*
General Code, when the whole cost and damages in making the improvement are assessed against the lands to
be benefited thereby, is not a public improvement subject to the general statutory provisions that surround
public improvements and contracts therefor.

2. A contract for the construction of a ditch under the conditions aforesaid is not a public contract. In the execution of such a contract the parties thereto deal with each
other in a private capacity, the contractors for themselves, and the county commissioners as the representatives
of the landowners, and the rights of the parties to such
a contract may be determined in a court of equity under
and by the same rules that control such courts in the adjustment and determination of the rights of parties to
any private contract.

(Decided December 16, 1922.)

APPEAL: Court of Appeals for Hocking county.

*Mr. John C. Pettit* and *Messrs. Marshall &
Fraser,* for plaintiffs.
*Miss Mary K. Davey,* prosecuting attorney; *Mr.
H. M. Whitcraft* and *Mr. M. A. Daugherty,* for defendant.

MIDDLETON, J.  This cause comes into this court
by appeal from the Court of Common Pleas of

Hocking county. It is an action in the alternative, for the reformation or rescission of a contract for the construction of a ditch along the line of Rush creek in that county, for a distance of approximately six miles. The plaintiffs herein were successful bidders for the work and entered into a contract to construct the ditch as an entirety for the sum of $52,000. The undisputed evidence establishes that this contract was made by the plaintiffs upon the basis of the estimate of the county engineer, which included an item for excavation of 335,012 cubic yards of dirt, at a cost of 16 cents per cubic yard, making the total estimate on said item $53,601.92. Two other items, one for grubbing and removing trees, amounting to $1,000, and one for removing three bridges and replacing same, amounting to $2,800, made the total estimated cost of the improvement, as fixed by the county engineer, the sum of $57,401.92. In this estimate there was an error of 100,000 cubic yards of dirt to be excavated, the error being solely a mathematical one, occurring through a mistake of a clerk in the engineer's office in making an addition of the several calculated amounts by sections which went into the aggregate quantity to be excavated. The estimates as aforesaid were announced at public outcry by the county engineer when the work was sold on July 3, 1920. After obtaining the contract, the plaintiffs began the construction of the ditch, when, some time in February of the following year, it was discovered that the estimate as made by the county surveyor in respect to the amount of excavation was erroneous, and that it would require the excavation of approximately 100,000 cubic yards more to complete the improve-

ment. Notwithstanding the discovery of this mistake the plaintiffs continued to perform their contract until they had excavated the amount of yardage fixed in the estimate, namely, 335,012 cubic yards. There remains to be excavated approximately one mile of the ditch. After the discovery of the mistake the commissioners refused to pay further estimates, having theretofore paid the plaintiffs on the contract the sum of $35,000, and the commissioners are now contending that no further payments should be made until the ditch is wholly finished. At the hearing in the court below it was decreed that by reason of such mistake the contract should be rescinded, and that the plaintiffs should recover in *quantum meruit* for the work done by them for which they had not been compensated. This amount the court found to be the sum of $14,000.

It is apparent that the plaintiffs in their petition, and the lower court by its action, had a wrong conception of the legal effect of a decree of rescission. Such a decree voids the whole contract, and the parties to the contract stand in relation to each other as if the contract "is not and never was." It necessarily follows from this that a recovery in *quantum meruit* must be for the whole amount of work done. This involves proof as to the reasonable value of all the work done. From the value of the whole work, as found from the evidence, there may be taken any payments theretofore made, and a finding made for the amount only, if any, remaining due after the deduction of said payments.

The defendants interpose many objections to the equitable relief prayed for in this action.

These objections, for the most part, rest upon the contention that the contract in question is a public contract, made in accordance with statutory laws and controlled wholly by such laws. It is urged that by reason of this fact there can be no reformation or rescission of the contract, and that com pensation in *quantum meruit* may not be allowed under the doctrine well settled in this state that there is no implied liability on the part of the public to pay for work or services when a contract for the same has not been made with due observance to all statutory requirements. It is contended by the defendants, in substance, that a court of equity is bound to follow the law, and that it cannot relieve the plaintiffs from their binding legal obligation to do all the work necessary for the construction of this ditch for the sum of $52,-000. They say that this contract was duly made in compliance with the statutes, and the plaintiffs are bound thereby. This requires the determination of the character of the contract involved, and if it is not one beyond the reach of a court of equity it must be conceded that under the established facts the plaintiffs are certainly entitled to relief. If a court of equity has jurisdiction to intervene it would be a humiliating failure of justice if the plaintiffs in this case, without any fault on their part, and solely by reason of the mistake or error of the agent of those who are to be benefited by this improvement, should be compelled to contribute of their means and labor to said improvement approximately one-fourth of its entire cost.

The construction of this ditch was undertaken by the county commissioners on the petition of

parties interested, and in accordance with Section 6443 *et seq.,* General Code, as such sections were numbered in 1920. The commissioners found what the damages and compensation in making the improvement should be, and they accordingly were, assessed against the lands to be benefited thereby, excepting the .building of two new bridges. Their finding in this behalf was as follows (Defendants' Exhibit 2, page 5):

"That said improvement is not of sufficient im - portance to the public to cause said damages and compensation which have been assessed to be paid out of the county treasury, no more than the board of county commissioners of Hocking county, Ohio, have agreed to build the two new bridges as re - quired by the said improvement."

Under this finding the ditch became an improvement in which only the assessed landowners were interested, and which, when completed, became their personal property. In the case of *Board of County Commissioners of Portage County* v. *Gates,* 83 Ohio St., 19, it is held:

"The county commissioners, sitting as a board, in hearing an application on the part of landowners for the establishment of a ditch, as provided by Section 4447, and following of the Revised Statutes, represent the landowners, petitioners, and not the county, where it is found that the improvement is of local interest only. and that the cost and expense should be assessed wholly against the lands benefited."

Again, on page 31 of the opinion. it is said:

"No finding appears which relieves the ditch from being simply a private ditch as between the landowners benefited and the public at large, and

in such case the county has no proprietary interest in the ditch. As held in *Commissioners* v. *Krauss,* 53 Ohio St., 631 ['632], 'it belongs to the landowners on whose lands and for whose benefit it was constructed. The commissioners simply acted as a board before whom the necessary proceedings for the construction of the ditch had, by the statute, to be conducted.' ''

In the case of *Commissioners* v. *Krauss,* there referred to, the court further said:

"With the fixing of the time for the sale of the construction of the improvement and the appointment of an engineer to superintend its construction the connection of the county commissioners with the improvement substantially ends. No duties of supervision are imposed on them.   *    *    *

"On the bond given by the engineer, an action may be brought by any person aggrieved by his failure to do his duty, and a recovery had for his use and benefit, Section 4494, Revised Statutes; and on the bond given by the contractor, a suit may be brought by any one who has sustained damages in consequence of the contractor's failure to perform the work, and a recovery had for his damages, Section 4478, Revised Statutes."

In the case of *Smith et al., Commissioners,* v. *Griffin,* 9 C. C., 223, 225, affirmed without report, 56 Ohio St., 775, it is said:

"It is true that under the provisions of the statute, the enforcement of proper and sufficient drainage of lands in localities requiring it, is worked out through application to the board of commissioners, who, together with the engineer and other instrumentalities provided, have charge of the work; yet, in the performance of such official du-

ties they are not acting as the agents of the county at large; nor can they bind the county at large by any neglect or wrongful act while conducting and managing the execution of the ditch work.

"If any relation of agency exists in such case, they would seem to be more the agents of the parties interested in the drainage, and who, by petition, have invoked the action of the commissioners, than of the taxpayers and people of the county."

In view of these decisions, we cannot adopt the theory that the contract before us is a contract for a public improvement and subject to all the limitations that surround a contract of that kind. We are unable to say that the doctrine of *Buchanan Bridge Co.* v. *Campbell*, 60 Ohio St., 406, and other kindred cases cited by the defendants, has any application to the case before us. If we are correct in this deduction the contract in question is not a public contract, and in its execution the parties thereto have dealt with each other only in a private capacity, the contractors for themselves and the commissioners as the representatives of the landowners. We are, therefore, unable to see why this contract should not be treated in a court of equity as one subject to all the rules pertaining to the reformation or rescission of a private contract. The mistake was mutual. The commissioners believed they were making a contract which involved an excavation of 335,012 cubic yards. a contract which imposed upon them the duty of excavating only that quantity. As to that particular item, therefore, both parties were mistaken. While a mutual mistake is ordinarily regarded as a ground for the rescission of a contract it may

also be ground for the reformation thereof. (4 Pomeroy's Equity Jurisprudence [4 ed.], Section 1376; *Baltimore & Ohio Rd. Co.* v. *Bing,* 89 Ohio St., 92.) While a rescission of this contract is warranted under the facts, yet in view of the situation of the parties it seems to us that a reformation would be more advantageous to all parties. Approximately one mile of the ditch is yet to be constructed. The plaintiffs are on the ground with their machinery and ready to proceed. If a new contract should be made under a rescission the plaintiffs would have all the advantage in bidding, and would be practically able to fix their own price, or, if some new contractor got the job, it would necessarily be at an increased price, because of the expense of moving his machinery to the work and making necessary preparation to perform the same. The plaintiffs got the contract on a bid of approximately 90 3/5 per cent. of the estimated cost. For the full protection of the defendants the percentage will be fixed at ninety. Therefore, the mistake amounted in money to ninety per cent. of $16,000, or $14,400. We will, therefore, decree a reformation of the contract, fixing the whole consideration at the sum of $66,400. This increased cost must be met by a reassessment of the lands benefited, as indicated by the instructions of the Attorney General under date of March 1, 1921.

It is urged that the plaintiffs were negligent in not discovering the mistake before making their bid for the work. It is not at all clear that they had an opportunity to go over the plans and estimates, or that the latter were on file prior to the day of the sale. But conceding that the plaintiffs

had the opportunity to go over the mathematical calculations of the county surveyor, their failure so to do does not necessarily convict them of negligence, or bar their right to complain of such error. While the County Commissioners, of course, did not warrant the correctness of the estimate, they did impliedly warrant that the engineer employed by them was reasonably well skilled to perform the duties assigned to him. The mistake in question was one that such implied warranty covered.

It is further contended that the plaintiffs ratified the contract by continuing to work after they discovered the error in the estimate. The facts show that they continued to work because of negotiations between them and the County Surveyor and Commissioners, looking to a settlement of this mistake, and because they construed their contract as requiring them to excavate 335,012 cubic yards in any and all events. There is not the slightest evidence before us which would warrant the conclusion that they intended to ratify the contract by continuing the work.

The completion of the ditch under this decree will relieve the lands from any overflowing water now complained of by the landowners, and will furnish the necessary drainage they asked for in the first instance. If after completion the improvement does not remove all the grounds of their present complaint the failure is in the plan of construction, and as to this they should have objected at the time of its adoption. Whatever damage from this source, or from the mistake of the engineer in his estimates, which any landowner has or may sustain is a matter of adjustment be-

tween the engineer and such landowner, as indicated by the court in *Commissioners* v. *Krauss,* *supra.*

The questions presented in this suit seem to have no parallel in any of the reported cases in this state. While we are not disposed to question the correctness of the principles announced in the case of *Long* v. *Inhabitants of Athol,* 196 Mass., 497, we prefer to hold that the contract before us is a private contract in the sense that it is subject to the same rules of equity as would obtain in the adjustment of the rights of parties to a private contract under the same facts.

*Decree accordingly.*

SAYRE, P. J., and MAUCK, J., concur.