In the Matter of the Appeal in Joint County Ditch, Known as Packer Creek, Petitioned for by Schulte et al.

(No. 262—Decided May 26, 1952.)

*Mr. E. Donald DeMuth,* for appellee petitioners.

*Mr. Myron Rosentreter,* prosecuting attorney, for appellee county commissioners.

*Mr. A. W. Bachman, Mr. Wm. L. Moon, Mr. Oliver True, Mr. Morton Neipp, Mr. Donald Wargowsky* and *Miss Luella Zehner,* for appellants.

CONN, J. On April 29, 1944, a petition, with bond pursuant to Section 6444, General Code, was filed with the auditor of Ottawa county by Fred Schulte and others, addressed to the county commissioners of Ottawa, Wood and Sandusky counties, for "recon-

struction by deepening and widening where necessary of Packer creek and its extension into Wood county known as Two-Root creek.'' It was averred that ''the construction of the improvement is necessary and will be conducive to the public welfare.'' The petition set forth the ''course and termini'' of the proposed improvement as commencing in Wood county and running in a northeasterly direction through Ottawa county ''to its outlet in Toussaint river, or to a sufficient outlet, being in all a distance of approximately 18 miles.'' The names and addresses of several property owners residing in Sandusky county were designated in the petition as interested in the improvement.

The nature of the work petitioned for included the deepening and widening of Packer creek where necessary, and also ''the enlargement of any bridges which are not of sufficient size.''

Section 6537, General Code, provides:

''* * * the joint board of county commissioners may do and perform all the things that the commissioners may do in a single county improvement, and shall be governed by and be subject to all the provisions of the chapter [G. C. Sections 6442 to 6508] relating to single county ditches in so far as applicable.''

The auditor of the county in which the petition is filed shall act as clerk of the joint board (Section 6538, General Code) and if the joint board of county commissioners finds for the improvement, the board may designate the engineer of any one of the interested counties to prepare the survey, reports and schedules, but the engineers in each interested county shall assist in making the reports and schedules (Section 6541, General Code).

Notice of the filing of such petition was duly given to the commissioners of the three counties by the auditor of Ottawa county, as provided for in Section

6539, General Code, fixing the time and place of the joint meeting of the county commissioners of the three counties. Thereafter the commissioners held such joint meeting as required by Section 6447, General Code, fixed a time for view and the first hearing on the petition, and also designated E. A. Guth, auditor of Ottawa county, to act as clerk of the board. Thereupon, the auditor of Ottawa county gave due notice of the proceedings to the owners of the land affected, as listed in the petition, describing the route, time fixed for view by the joint board of commissioners, and the time and place of first hearing.

Subsequently, on June 2, 1944, an application for extension of the improvement, with list of owners affected, was filed with the joint board of commissioners pursuant to Section 6449, General Code. This extension, as applied for, added several miles upstream and extended the total length of the improvement to about 25 miles.

Later a petition was filed to amend the engineers' report so as to include removal of the buttresses in the New York Central bridge at Genoa, but this petition was dismissed by the board and later was withdrawn. Stella Tabbert and also Charles and Mary Nehls asked that the report be amended to include removal of the dam in Crane creek at Luckey, Ohio. It does not appear that said requested amendment was directly acted upon by the board.

Pursuant to the previous action of the joint board and notice given to the owners of land affected by its improvement, a meeting was held on June 14, 1944, at which time the board heard the evidence for and against the proposed improvement and extension, and by resolution duly adopted pursuant to Section 6452, General Code, found that the improvement and extension as petitioned for was necessary, that it will be conducive to the public welfare, and that the costs will

be less than the benefits. The board granted the prayer of the petition.

The board also found that the route and termini of the proposed improvement and extension "are the best and are hereby adopted," and also directed the engineers of Wood and Ottawa counties to make the survey of this improvement and the engineer of Ottawa county to prepare the plans, specifications and estimates, with suitable maps and profiles, set construction stakes, and perform "such other duties as required by law" under authority of Section 6541, General Code.

It was further ordered that the engineer file with the auditor of Ottawa county "all of said maps, profiles, schedules and reports prepared by the engineers on September 1, 1944, at 10 o'clock a. m."

On applications made from time to time by the engineer of Ottawa county, the board granted extensions to complete and file the survey, reports and schedules.

The board, on February 3, 1950, by resolution duly adopted, reaffirmed its earlier finding, made June 14, 1944, and also approved the report made by the engineers of Wood, Sandusky and Ottawa counties. This report was filed with the auditor of Ottawa county March 15, 1950, pursuant to the action taken by the board on February 3, 1950. On the day the report was filed, the board fixed April 14, 1950, as the date for the final hearing on the engineers' reports, including construction specifications, schedules, estimated assessments and claims for damages.

As provided for in Section 6456, General Code, notice of the schedules of estimated assessments were given by mail to each of the several owners whose names were on the engineers' schedule and also the date of hearing by the board. The total estimated cost of the improvement, including interest on bonds,

amounted to $120,500, not including claims for damages.

Numerous protests on acreage and assessment and also claims for damages were filed. Hearings before the board were adjourned from time to time. Certain minor adjustments were made by the board on protest as to acreage and estimated assessments.

Pursuant to the provisions of Sections 6459 to 6463, both inclusive, General Code, the board held its final hearing on May 17, 1950. Claims for damages had been filed by numerous property owners, aggregating $118,000. These claims were severally considered by the board and each and all disallowed. The board approved the schedule of assessments to be paid by each of the three counties and certain political subdivisions, determined the time to be given the owners in which to pay the assessments, fixed the time for letting the contracts, and directed that notice be given of the time when and place where bids would be received for the construction of such improvement.

Section 6463, General Code, makes provision for appeal as follows:

"Any owner opposed to the granting of the petition, or any owner opposed to further proceedings in the improvement; and any owner who claims that the assessment levied against him or it is excessive, or is not in proportion to benefits, may appeal from any order made pursuant to this section, as provided in this chapter [G. C. Sections 6442 to 6508]."

Separate appeals to the Common Pleas Courts (Sections 6467 and 6468, General Code) were duly perfected by a number of owners, as hereinafter indicated.

Section 6467, General Code, outlines the several grounds on which an appeal may be taken, as follows:
"* * *

"(1) Is the improvement necessary?

"(2) Will the improvement be conducive to the public welfare?

"(3) Is the cost of the improvement greater than the benefits conferred?

"(4) Is the route, termini, or the mode of construction the best to accomplish the purpose of the improvement?

"(5) Are the assessments levied according to benefits?

"(6) Is the award for compensation or damages just?

"Such appeal may be taken from any order affecting any part of the improvement, as well as from any order affecting the entire improvement."

Appeals were taken to the Common Pleas Court from the final order of the board by several owners, to wit:

1. The New York Central Railroad Company appealed on all grounds enumerated in the statute and also from the disallowance of its claims for damages.

2. Stella Tabbert appealed on all statutory grounds and also on disallowance of claim for damages, failure of the engineers in their report to comply with Section 6454, General Code, in failing to note what culverts and bridges must be raised or channel enlargement made, and failure of the board to consider obstructions in Crane creek and Schneider ditch and removal of same.

3. Charles Goodman appealed from the order of the board dismissing his application to amend the engineers' report to provide for the removal of buttress supporting walls of the New York Central Railroad bridge across Packer creek. As stated above, this appeal was withdrawn.

4. Separate appeals were duly filed by William Dreier, Donald and Frances Leggett, Fred Lickert,

Frame Whipple, Robert Millinger, Carl Emmerick and Wilson Apling, on the grounds enumerated in the statute and the disallowance of their respective claims for damages.

5. C. H. Nehle and Mary Nehle appealed on the statutory grounds and on disallowance of damage claims presented.

6. Otto Steindem appealed on all statutory grounds, and also on disallowance of claims for land taken and damages, changing the natural course of said creek, and failure of the board to consider removal of obstructions in Crane creek and Schneider ditch, and also the removal of same.

The issues in the Common Pleas Court are raised upon the original papers and statements of the appellants (without pleadings), the same being deemed denied. Section 6471, General Code; 14 Ohio Jurisprudence, 966, Section 195.

The procedure is outlined in Section 6472, General Code. This section provides that the Common Pleas Court, sitting as a court of equity, shall hear all matters appealed *de novo* and that the "appeal shall bring into the Court of Common Pleas all the owners of land who in any way may be interested in or affected by the matter appealed * * * save and except an appeal from an order allowing or refusing to allow compensation or damages."

The statute places the burden of proof on "the owner having the affirmative of the proposition." Section 6472, General Code.

Pursuant to Section 6543, General Code, claims for compensation shall be had the same as in single county ditch cases. It is provided further in this section that the auditor of the county in which the petition is filed shall transmit to the clerk of the Common Pleas Court in which the land is situated the original papers relating thereto, together with a certified transcript

of the findings on the improvement and on the claims, which shall be docketed by the clerk. The following section (Section 6544, General Code) provides that "appeals on claims for compensation or damages shall be tried by jury as provided in chapter one of this title." 14 Ohio Jurisprudence, 949, Section 176.

Section 6544, General Code, provides also that "Save and except appeals on claims for comensation or damages, all appeals to the Court of Common Pleas shall be heard by one judge of the Court of Common Pleas from each of the counties interested, sitting *en banc* * * * ."

The court, composed of common pleas judges of Wood, Sandusky and Ottawa counties, sitting *en banc,* as a court of equity, heard the several appeals *de novo* and found in favor of the improvement on each and all the statutory grounds specified in Section 6467, General Code, as above stated, excepting the sixth.

The court approved the plans, specifications, profiles and maps originally reported by the engineers of the three counties for the cleaning of the ditch, but determined that the cost of changing such improvement in accordance with the supplemental plan prepared by the engineers for the raising of the Carroll-Benton bridge and the construction of dikes between said bridge and Rainbow bridge would be greater than the benefits derived.

It was ordered that the cause be continued for hearing on claims for damages and that the journal entry be certified by the clerk of courts to the auditor of Ottawa county.

Notices of appeal on questions of law to this court were duly filed by the New York Central Railroad Company, Otto Steindem, Stella Tabbert and jointly by Donald Leggett and 23 other owners of land located at or near the lower terminus of the improvement.

The principal assignments of error are that the

board employed Russell Harvey as engineer without a prior written request pursuant to Section 2411, General Code; that the existence of the several requirements enumerated in the statute were not established by sufficient evidence; and that there was a taking of private property for public use in violation of the Constitutions of Ohio and the United States.

Taking up the assignments of error in the order above stated, we first consider the contention made by certain appellants that the employment of Harvey as engineer to make the report, assessment and schedules, and his preparation of same, was without authority of law, and "that no proper report, schedule or complete plans" were ever before the board or the Common Pleas Court.

It does not appear in the record that a written request to employ Harvey was made by the engineer of Ottawa county to the board or that the board had employed him, as is provided in Section 2411, General Code.

As heretofore pointed out, the board designated the engineers of Wood and Ottawa counties to make the survey for this improvement, the course of Packer creek being wholly within Wood and Ottawa counties. The board also designated the engineer of Ottawa county to file and make the report, suitable maps showing location of land to be assessed, profiles, and to "perform such other duties as required by law." (Section 6541, General Code.)

The engineers of both Wood and Ottawa counties testified that the survey, plans and specifications for the improvement were made under their direction or supervision and the record also shows that the report of the engineer of Ottawa county filed with the board had been approved and signed by the engineer of each of the three counties.

The record also shows that Harvey was employed by the county engineer of Ottawa county; that his qualifications were practically conceded; that the survey of the land affected was made by the engineer of Ottawa county or under his supervision; and that the schedule of assessments was prepared under his supervision pursuant to an adopted plan for same.

On this showing, it is our opinion that Harvey was at least a *de facto* employee of the board, as engineer, and that, as the report shows, the services he performed were rendered under the supervision and with the approval of the engineers of the three counties.

In the event claims for compensation or damages in substantial amounts were subsequently sustained, a reassessment would be required in order to apportion these additional costs. Vol. 1, Opinions of Attorney General (1933), 289, No. 205; *Gilmore* v. *Board of County Commrs. of Hocking County*, 17 Ohio App., 177.

It is our conclusion that the engineers' report on this improvement and the detailed services rendered should not be invalidated on the basis of technical considerations, as urged by certain appellants, and that this assignment of error should not be sustained.

It is also contended by appellants that the court erred in finding that the improvement is necessary and is conducive to public welfare; that the cost of same is less than the benefits; and that the assessments levied are according to benefits. It is claimed by certain appellants that the judgment of the court results in taking private property for public use in violation of the Constitutions of Ohio and the United States.

The record discloses that the claims for compensation and damages are substantial. In fact, the aggregate of the claims is almost equal to the cost of the improvement. When the improvement is not one of

general interest and of "sufficient importance to the public" to be paid out of the county treasury, the entire cost and expense should be assessed against the lands benefited. *Board of County Commrs. of Portage County* v. *Gates,* 83 Ohio St., 19, 93 N. E. 255; Vol. 1, Opinions of Attorney General (1938), 744, No. 2242.

Under the provisions of Section 6459, General Code, the board may order the amount of compensation for land taken, and also the amount of damages, paid out of the county ditch fund of the county in which the land is located and may order the amount so advanced subsequently restored to the ditch fund by apportioning and assessing the amount so advanced to the benefited land owners. Section 6459, General Code, also provides that the amount so payable shall be paid before any work on the proposed improvement is done. 14 Ohio Jurisprudence, 935, Section 156. See, also, *ibid.,* 950, Section 177.

However, in the instant case, the board denied all claims for compensation and damages and at the same time found in favor of the improvement. The trial court made a like finding on a hearing *de novo* and entered judgment accordingly. In that court the petitioners had the burden of establishing by a preponderance of the evidence each and all the statutory requirements, excepting compensation for property taken and damages sustained by the owners.

The drainage code is lacking in clarity with respect to certain phases of the proceedings by the commissioners as well as upon appeal to the Common Pleas Court. Construction or interpretation of the several sections is therefore required incident to the determination of this appeal.

It is a rule of statutory construction that all statutes which expressly refer to each other or by implication relate to each other or refer to the same subject matter

should be construed as being *in pari materia*. 37 Ohio Jurisprudence, 599, Section 332.

Upon an appeal by a person affected by the improvement, raising the questions enumerated in Section 6467, General Code, a trial *de novo* as in a court of equity is had upon all matters appealed excepting upon the questions of compensation and damages. Upon the first five items referred to in the section, the burden is upon the petitioners. Section 6472, General Code, expressly provides that "the burden of proof shall be on the owner having the affirmative of the proposition, who shall have the opening and closing."

As already pointed out, Section 6543, General Code, provides that when an appeal is taken, claims for compensation or damages, with original papers relating thereto, shall be transmitted to the clerk of the Court of Common Pleas of the county in which the land is situated and by that official placed on the docket, and that the claimants be accorded a trial by jury for the determination thereof. In adjudging the amount of compensation or damages in such case, the Common Pleas Court exercises a semblance of original rather than appellate jurisdiction. 14 Ohio Jurisprudence, 948, Section 172. Pursuant to Section 6475, General Code, when there is more than one appellant with separate claims, the court in its discretion may submit all claims to the same jury. 14 Ohio Jurisprudence, 949, Section 176.

Construing the several pertinent sections of the drainage code in logical relationship, it is concluded that upon an appeal to the Common Pleas Court as provided in Section 6467, General Code, that court is not capable of or in position to determine whether the cost of the improvement is greater or less than the benefits conferred until such time as the amounts of compensation and damages are finally determined. Although in a preliminary way the court could possibly

determine that the improvement is necessary, that it is conducive to the public welfare, and that the route, termini or mode of construction is the best to accomplish the purpose, a final determination of the appeal on trial *de novo* can not possibly be had until after the determination of the amount of compensation and damages.

It is therefore concluded that on the appeal to the Common Pleas Court, that court should first adjudge any claims for compensation and damages which have been docketed prior to final approval of the project. In the instant case, the three-judge court should not have made a final determination of the necessity, etc., until after the final determination by the Common Pleas Court of Ottawa county of all appeals on compensation and damages.

This not having been done, and the several appellants having been prejudiced thereby, it is our opinion that the judgment of the trial court should be reversed and this cause remanded thereto for a new trial.

In view of the reversal of this case and its remand for a new trial, it appears to be pertinent to comment on the contention made by appellants that the dams placed in Crane creek and Schneider ditch obstruct the natural flow of water in those areas and cause a diversion of same into Packer creek. There is credible evidence that the quantity of water diverted is substantial, that this diverted water increases the flow in Packer creek, and that this increased flow sustains a direct and proximate relation to material fact issues before the board and on appeal in the Common Pleas Court.

It is contended further and the evidence tends to show that the increased flow in Packer creek augments the amount of overflow water along the lower terminus of the stream, as the proposed improvement does not include a plan for increasing the capacity of the outlet of Packer creek.

Section 6443, General Code, appears to confer jurisdiction generally on county commissioners to remove obstructions from county ditches. See, also, Opinions of Attorney General (1941), 470, No. 3896. It may be noted further that Section 6462, General Code, contains an express provision authorizing the board in determining "whether * * * the improvement should be granted" to consider among other things "the sufficiency or insufficiency of the outlet." *Love* v. *Simon,* 11 C. C. (N. S.), 359, 20 C. D., 639, affirmed 82 Ohio St., 400, 92 N. E., 1119; *Wood County Commrs.* v. *Shinnew,* 10 C. C. (N. S.), 554, 20 C. D., 158, affirmed 80 Ohio St., 712, 89 N. E., 1124.

It is apparent that if more water is precipitated into this creek in times of flood, such additional volume of water bears directly on the adequacy of the outlet and also on the capacity of the Carroll-Benton bridge, and the fact issue that this bridge became an obstruction to the flow of water at such times. Closely related is the further issue that dikes are necessary between that bridge and Rainbow bridge to prevent overflow on the lands along the lower terminus of this stream.

If it were established that the construction of these dams was duly authorized and that they substantially increased the normal flow of water, resulting directly in flooding lands from time to time along the lower terminus of Packer creek, such result would be taking property of the owners of such lands for public use for which such owners may claim compensation under the Constitution.

It is the general rule that neither the trial court nor this court may substitute its judgment for that of the board. Furthermore, on appeal, the petitioners have the burden of proof to establish the affirmative of all issues in relation to the finding in favor of the improvement. Unless such finding or judgment is manifestly against the weight of the evidence, an af-

firmance must follow. On the record before us, however, there is no evidence in relation to the circumstances surrounding the construction of these dams or by what authority they were constructed and no showing why they should not or could not be removed so as to relieve Packer creek of all water which would otherwise naturally drain into Crane creek and Schneider ditch and be carried by these streams directly into the lake.

Upon the admission of the engineers' report the petitioners made a prima facie case. The record discloses that the prima facie case was overcome by direct evidence offered by the appellants as to the removal of the dams and with respect to the lower terminus. Aside from whether Harvey was properly employed, he was qualified to testify concerning the feasibility and other features of the project which he surveyed, prepared and proposed. The evidence relating to the effect of the improvement upon the lower owners was apparently disregarded.

Upon a retrial of the issues, the pertinent provisions of the drainage code can be given application and the right of the owners of lands affected be adjudicated accordingly. Since the three-judge court did not have jurisdiction of the appeals on compensation and damages, such appeals in this court are dismissed. Presumably, such appeals are pending in the Common Pleas Court for determination. Upon the other appeals, the judgment of the Common Pleas Court is reversed, and the cause is remanded for a new trial.

*Judgment accordingly.*

FESS and SAVORD, JJ., concur.